THE STATE OF KANSAS v. JOHN H. MEDLEY.

1. LARCENY — *Proper Instruction.*  In the trial of a charge of larceny, the court properly instructed the jury with reference to the presumption of innocence which surrounds the defendant throughout the trial, and afterward briefly stated the reason for that rule.  *Held*, Not error.

2. CONVICTION, *Sustained.*  The testimony examined, and *held* to be sufficient to sustain the conviction.

*Appeal from Wabaunsee District Court.*

THE opinion herein, filed February 9, 1895, states the material facts.

*Geo. G. Cornell*, for appellant.

*John T. Little*, attorney general, and *J. H. Jones*, county attorney, for The State.

The opinion of the court was delivered by

JOHNSTON, J.: On the 3d day of October, 1894, John H. Medley was convicted upon a charge of stealing a yearling steer, the property of Thomas C. Finney, and the penalty adjudged was imprisonment in the state penitentiary for a term of three years.  He appeals, and alleges two grounds

of error: One, that the testimony is insufficient to sustain the conviction; and the other, that the instructions given were misleading and improper.

The conviction rests largely upon circumstantial evidence, but in our view it is sufficient to uphold the verdict and judgment. On Friday, June 1, 1894, the steer was seen in the pasture with others, and on the next morning the pasture fence, which was made of wire, had been cut and taken down, and the steer was missing. Late on Friday evening, Simpson (a butcher) and the defendant were seen going from the town of Paxico toward the pasture, each of them riding a horse. Later on the same night, they were seen by another returning to Paxico with an animal which looked like the one taken from the pasture, one of them leading and the other driving it. At a still later time on the same night, they were seen by another witness killing a steer which, in size, sex, and color, corresponded with the one taken from the pasture. A few days afterward, in response to an inquiry made by Finney, the owner of the steer, the defendant denied that he butchered a steer on Friday night, and his answers concerning the matter were evasive and conflicting. Then there is testimony that the defendant went to the house of one Griffith, and attempted, by promise of reward, to induce Griffith to tell Finney, who had lost the steer, that he (Griffith) had sold to another a similar steer, stating at the same time that Finney was making a great howl about the loss of a steer, and that if Griffith would make this statement to Finney it would quiet the matter and he would look no further. It may be further remarked, that at the place where the wires were cut and the steer taken out were the tracks of two horses — one on either side of the tracks of the steer — and that the tracks of the latter were sliding, indicating resistance, and that the animal was pulling back on the rope or halter with which it was being led out of the pasture. Although there was some confusion in the testimony with reference to the description of the animal, and evidence which was contradictory of that recited, the circumstances tended

strongly to show that the steer was stolen from the pasture, and that the defendant participated in the larceny. In view of the testimony that was given, it cannot be said that the verdict and judgment are without support.

It is further contended, that the court gave an instruction that divested the defendant of the presumption of innocence which the law throws around every person charged with crime. The charge of the court stated strongly and well that the defendant was presumed to be innocent of the offense charged, and of each and every ingredient necessary to constitute the offense, and that this presumption continued to operate in his favor until his guilt was proved by competent evidence, beyond a reasonable doubt. The jury was told in different ways that the burden which was upon the state never shifted to the defendant in any stage of the case because he was charged with an offense. After these instructions were given, the court further charged that

"The rule of law which throws around the defendant the presumption of innocence, and requires the state to establish beyond a reasonable doubt every material fact averred in the information, is not intended to shield those who are actually guilty from just and merited punishment, but is the humane provision of the law, which is intended for the protection of the innocent, and to guard, so far as human agencies can, against the conviction of those unjustly accused of crime."

Although this statement may not have been necessary to the proper submission of the case, it fairly states the reason for the rule; and in its application to the present case we discover nothing which is misleading or prejudicial to the defendant. The judgment of the district court will be affirmed.

All the Justices concurring.