## MOFFITT v. UNITED STATES.
### No. 3137.

Circuit Court of Appeals, Tenth Circuit.
March 15, 1946.

Writ of Certiorari Denied May 27, 1946.
See 66 S.Ct. 1343.

---

J. B. Dudley, of Oklahoma City, Okl. (Robert K. Everest and Dave Tant, both of Oklahoma City, Okl., on the brief), for appellant.

Charles E. Dierker, U. S. Atty., of Oklahoma City, Okl. (John A. Brett, Asst. U. S. Atty., and Robert E. Shelton, Asst. U. S. Atty., both of Oklahoma City, Okl., on the brief), for appellee.

Before PHILLIPS, BRATTON & HUXMAN, Circuit Judges.

HUXMAN, Circuit Judge.

C. R. Moffitt, the appellant, was indicted, tried, convicted and sentenced on each of three counts of an indictment charging him with violations of the mail fraud statute, 18 U.S.C.A. § 338. The sentences on the three counts were made to run consecutively. The general charge of the indictment, as far as necessary to present the picture, was that appellant and one George Harris, alias Ralph Howard, concocted a scheme to defraud the Mudge Oil Company, a corporation, by selling to it a number of worthless oil and gas leases, knowing them to be worthless; that in furtherance of this scheme to defraud, Howard gave Moffitt a forged check on the Mudge Oil Company, drawn on the Mellon National Bank of Pittsburgh, Pennsylvania.

Count 1 charged that Moffitt used the mails to defraud by endorsing the forged check and depositing it for collection with the First National Bank of Blackwell, Oklahoma,[1] knowing that the bank would, as it did, transmit the check by use of the mails

---

[1] Herein called the Blackwell Bank.

to its correspondent bank in New York city for collection, together with a regular letter of transmittal; that Moffitt well knew that the use of the mail in transmitting the check for collection was for the purpose of effectuating the scheme to defraud. Count 2 charged the use of the mails to defraud by causing the correspondent bank in New York to place a letter in the mails addressed to the Blackwell Bank, advising that the item had been paid. When the Blackwell Bank transmitted the check to its correspondent bank in New York for collection, it also requested that it confirm payment of the check by wire. The correspondent bank accordingly sent a wire in code advising the Blackwell Bank that the check had been paid, and also sent a letter through the mail confirming the code telegram. Count 3 charged Moffitt with using the mails to defraud by causing the letter confirming the telegram to be sent through the mails.

The evidence tending to establish the general scheme to defraud was in sharp conflict. It was sufficient to sustain the verdict of guilty by the jury. No serious question is raised as to the sufficiency of the evidence to sustain the verdict on Count 1. Appellant set forth ten grounds for reversal in his notice of appeal, but only four of these are urged in his brief and argument before this court.

Appellant contends that the court erred in giving the following instructions:

(a) A reasonable doubt is such a doubt as would cause a man of ordinary prudence, sensibility and decision, in determining an issue of like concern to himself, to pause or hesitate in arriving at his conclusions, and that is the criterion for you in this case. In other words, you must be satisfied to the extent that a reasonably prudent man would require before acting or deciding in his most important affairs. If, after considering all of the evidence, your minds rest satisfied and you have an abiding conviction that the defendant is guilty, if you are morally certain of it, then that will be proof beyond a reasonable doubt, and, if you find the defendant is guilty to that extent it will be your duty to convict such defendant; otherwise, to acquit him.

You are instructed that the rule of law which throws around a defendant the presumption of innocence and requires the government to establish, beyond a reasonable doubt, every material fact averred in the indictment, is not intended to shield those who are actually guilty from just punishment, but it is a humane provision of the law which is intended for the protection of the innocent and to guard against the conviction of those unjustly accused of crime.

(b) You are further instructed that the question of intent is one that is hard to establish directly, because grown persons do not always disclose the object they have in view in any acts in which they may indulge, and you have to gather the intent from the character of the act, the circumstances surrounding it, and from conduct of a like character which may appear as tending to aid you in finding and discovering it. But in connection with all this, unless the testimony satisfies you of something else, you are warranted in holding a party responsible for the natural and probable and reasonable consequences of his act.

(c) If you find from the evidence, or if you entertain a reasonable doubt thereof, that the defendant actually believed in good faith that the check was genuine; that the leases were worth $10,000; and that the Mudge Oil Company had authorized Howard to take back in cash the $15,000, or that Howard would account to the Mudge Oil Company for same, then the defendant had no intention to defraud and it will be your duty to return a verdict of not guilty.

(d) You are instructed that the statutes of the United States provide that any one who abets, aids, counsels, commands, induces or procures the commission of any offense defined in any law of the United States is a principal and is himself guilty of the commission of the offense and may be charged, tried and convicted of the same as if he alone had been the perpetrator of the offense, so if you believe from the evidence beyond a reasonable doubt that the defendant knowingly aided and abetted in the performance of the acts required to constitute the crime he would be as guilty as if he had committed them himself.

■ It is somewhat difficult to ascertain the specific objections of appellant to the court's instructions. It is stated that the court committed error and weakened and limited its previous instructions by giving that part of Instruction (a) in which it is stated that the presumption of innocence was "not intended to shield those who are actually guilty from just punish-

ment, but is a humane provision of the law which is intended for the protection of the innocent and to guard against the conviction of those unjustly accused of crime." The rule of law which throws around a defendant the presumption of innocence is intended as a protection for the innocent, and, conversely, it is not intended to shield the guilty. Of course the presumption of innocence goes with those who are actually guilty throughout the trial, as well as with the innocent, and a guilty defendant is entitled to the benefit of this presumption until the force and effect thereof is overcome by the government. There is, however, nothing in this instruction from which it could be inferred that the presumption does not go with the guilty defendant as well as with the innocent. When the entire paragraph in which this language appears is read, a jury could not have been misled. In other portions of its instructions, the court had instructed the jury that the defendant was presumed to be innocent and that they must vote for his acquittal until satisfied beyond a reasonable doubt that the government had established the existence of every element necessary to establish the defendant's guilt.

Apparently appellant also complains that the court did not instruct the jury that the presumption that one intends the natural consequences of his acts was rebuttable. True, the court did not use these exact words. As pointed out, the court in substance told the jury that one is presumed to intend the natural, probable, and reasonable consequences of his acts, and that the jury was justified in concluding that this was what appellant intended, unless the testimony satisfied them of something else. This could only mean that the presumption prevailed until rebutted by other evidence. Whether a jury is properly instructed cannot be determined from a consideration of a single paragraph, sentence, phrase, or word. The instructions must be read and considered in their entirety. When so read, there can be no doubt or misunderstanding in the mind of an ordinary, intelligent person as to the rights of the defendant in this case, or what the government was required to establish before the jury could find the defendant guilty. It is not claimed that the court failed to correctly define the elements of the offense. Other feeble attacks are made on the instructions, which it is not necessary to note in detail. It may

be conceded that the instructions are not a model of clarity or conciseness. But there can be no doubt, from a reading of all the instructions, that the jury understood that the defendant was presumed to be innocent at all times and until the government established to their satisfaction and beyond a reasonable doubt every element necessary to constitute the offense with which he was charged. We find no reversible error in the instructions.

It is next urged that the court erred in overruling appellant's demurrer to Counts 2 and 3.

18 U.S.C.A. § 338 makes it an offense for anyone to place or cause to be placed any letter, etc., in any postoffice to be sent or delivered by the postoffice, or to knowingly cause to be delivered by mail any such letter at the place at which it is directed, in furtherance of a scheme to defraud. Both Counts 2 and 3 of the indictment specifically alleged that appellant "did use or cause to be used the United States mails" in the perpetration of his scheme to defraud. Each count describes in particular the communications which were sent or caused to be sent through the mails, stating that the communications were enclosed in a postpaid envelope, addressed to the person who was to receive them. It is not necessary to descend into particulars in describing the communications. The demurrers to Counts 2 and 3 of the indictment were properly overruled.

It is also urged that the trial court erred in overruling appellant's motion for a directed verdict as to Counts 2 and 3. The argument in support of this assignment is that the evidence was insufficient to submit the issue of the use of the mails in regard to the transactions set out in Counts 2 and 3 to the jury. It is claimed that there was no evidence that the letter advising payment of the check or the letter confirming the telegram were mailed, in New York or elsewhere. There is no direct evidence that the correspondent bank in New York actually placed the letter containing the paid advice or the letter confirming the telegram in the mail. But there was direct testimony by an official of the Blackwell Bank that it received such letters from its correspondent bank by mail, through the United States postoffice, addressed to it at Blackwell, Oklahoma. A fact may be established as surely by presumptions which naturally and logically

flow from a chain of events and circumstances as by positive, direct proof.[2] The transmittal of the collection item required a reply notifying the bank that the item had been paid. That the mails are the usual method of communicating such information is presumed to be within the knowledge of anyone with ordinary business experience.[3] The Blackwell Bank also asked confirmation by telegram. This was sent by wire as requested, and a letter also came through the mails confirming the telegram. The Blackwell Bank could not have received these two letters through the mails as it did if they were not mailed.

The decision by Judge Phillips in Brady v. United States, 8 Cir., 24 F.2d 397, and kindred cases, upon which appellant relies, are not in point. The only evidence in the Brady case of the use of the mails was the introduction of the letter itself with the testimony of the recipient that he received it through the mails. The envelopes in which the letters were received were not introduced, nor was even the genuineness of the signature established. These facts clearly distinguish the Brady case from this case. In our case it stands admitted that appellant caused the letter containing the collection item to be sent through the mails. That act required the correspondent bank to send a letter through the mails notifying the collection bank that the items had been paid. The testimony of the bank official was positive that the letter was received through the postoffice and was addressed to the bank.

■ It is further urged that appellant did not cause the mails to be used by the correspondent bank in notifying the Blackwell Bank that the item had been paid. When appellant took the check in question to the bank for collection, he understood that he could not check against the deposit until the collection item had cleared. He knew that it would be necessary to send the check to the bank on which it was drawn, for payment. By his act of depositing the check for collection, he constituted the bank his agent in transmitting the check to the bank on which it was drawn for payment. He also knew that the ordinary and usual method of transmitting such an item was by use of the mails. He also knew that the ordinary and usual method of notifying the collecting bank of payment was by use of the mails. This he must have known from the fact that he was informed that it would be about ten days before he could check against the deposit. When he deposited the check for collection he became liable for every link in the chain of events which he had set in motion which reasonably or ordinarily required the use of the mails to complete the transaction. He caused the mails to be used by the correspondent bank in New York notifying the Blackwell Bank that the item had been paid.[4] The motion for a directed verdict as to Count 2 of the information was properly overruled.

■ A more serious question is presented with regard to the motion for a directed verdict as to Count 3. As pointed out above, when appellant caused the collection item to be sent through the mail he was chargeable with the use of the mail by the correspondent bank in notifying the Blackwell Bank that the item had been paid, because as a man of ordinary business experience he knew that it was the established custom of banks to use the mails for such purposes. It cannot, however, be said as a matter of law that it is a well established custom, of which men of ordinary business experience would have knowledge, that banks require, in addition to the ordinary and customary notification, further notification by telegram and further confirmation of the telegram by mail. There is no evidence in the record that this was the usual and ordinary practice followed by the Blackwell Bank in handling collection items, and there is a complete absence of any evidence that appellant was informed of such a custom or that such a procedure would be followed in this instance. He had no reason, therefore, to believe or

---

[2] Tot v. United States, 319 U.S. 463, 467, 63 S.Ct. 1241, 87 L.Ed. 1519; Am. Jur., Vol. 20, § 273.

[3] Shea v. United States, 6 Cir., 251 F. 440, 447; Spear v. United States, 8 Cir., 246 F. 250.

[4] In United States v. Kenofskey, 243 U. S. 440, 443, 37 S.Ct. 438, 439, 61 L.Ed. 836, the Supreme Court said: " 'Cause' is a word of very broad import and its meaning is generally known. It is used in the section in its well-known sense of bringing about, and in such sense it is applicable to the conduct of Kenofskey. He deliberately calculated the effect of giving the false proofs to his superior officer; and the effect followed, demonstrating the efficacy of his selection of means." See, also, United States v. Weisman, 2 Cir., 83 F.2d 470, 107 A. L.R. 293.

know when he deposited the check for collection that such a telegram would be required, or that if it was required that a further letter also would be mailed confirming the telegram. The telegram and letter confirming it were not ordinary, usual, or customary links in the chain of events which he set in motion by depositing the check for collection. It follows that he did not use or cause the mails to be used by the correspondent bank in sending the letter confirming the telegram. His motion for a directed verdict as to Count 3 should have been sustained.

The assignment of error that the District Court erred in overruling appellant's motion to declare a mistrial and discharge the jury on account of the misconduct of the United States Attorney is wholly without merit, and needs no detailed discussion.

The judgment of the trial court on count 3 is reversed, and as to it the cause is remanded, with directions to proceed in conformity with the views expressed herein. In all other respects, the judgment is affirmed.