John D. SHAW, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 14568.

United States Court of Appeals
Ninth Circuit.

Feb. 14, 1957.

Harold J. Butcher, Anchorage, Alaska, for appellant.

William T. Plummer, U. S. Atty., and Lloyd L. Duggar, Asst. U. S. Atty., Anchorage, Alaska, for appellee.

Before FEE and BARNES, Circuit Judges, and MURRAY, District Judge.

JAMES ALGER FEE, Circuit Judge.

John D. Shaw was convicted by a jury of having been employed in an agency of the United States and, within two years after such employment or service had ceased, having prosecuted or acted as counsel, attorney or agent for prosecuting a claim against the United States involving a subject matter directly connected with which he was so employed or performed duties.[1]

The jury recommended leniency, and he was sentenced to pay a fine of $100 by the court. He appeals from this judgment.

The facts shown by the evidence are almost uncontroverted. The Alaska Railroad is owned by the United States and operated as an agency of the United States. Shaw was employed by the Alaska Railroad as an Assistant Chief Dispatcher, usually during the hours from 5:00 p. m. to midnight. During the day, Shaw was clerk in the law office of Harold J. Butcher, attorney for appellant in this case. Under the Alaska statute, Shaw had filed an application to study law under Butcher, a practicing attorney, with a view to taking the territorial bar examination. Shaw was pursuing both employments at the time of the Rainbow collision, which was the subject of the action, George Dushon vs. The United States, Civil No. A–7605, in the District Court of the Territory of Alaska, to which reference will subsequently be made.

According to the allegation of the information,

"* * * on March 24, 1950, the said John D. Shaw was directly connected with and performed duties relating to an accident which occurred at or about 5:15 P.M. on said day when Extra Train No. 562 South, of the Alaska Railroad came into collision with a gas car and trailers attached, operated by a government contractor, at or near Rainbow at mile 91.7 on the Alaska Railroad."

1. 18 U.S.C.A. § 284, which provides: "Whoever, having been employed in any agency of the United States, including commissioned officers assigned to duty in such agency, within two years after the time when such employment or service has ceased, prosecutes or acts as counsel, attorney, or agent for prosecuting, any claims against the United States involving any subject matter directly connected with which such person was so employed or performed duty, shall be fined not more than $10,000 or imprisoned not more than one year, or both."

The evidence showed that Shaw was Assistant Chief Dispatcher of the Alaska Railroad on March 24, 1950, after 5:00 p. m. Although he was in complete charge of the office in the absence of the Chief Dispatcher and operating the north control board, Extra Train No. 562 South was proceeding under orders dispatched from the south board at the time of the collision. The latter board was then operated by Kerwin Frank under the supervision of Shaw. One of the train crew reported the collision to Kerwin by telephone. The latter was so much affected by the mischance that he asked Shaw to take over the south board telephone and handle the matter. Shaw talked to the crew and gave directions for the return of the train to Anchorage with the dead and wounded. He also directed ambulances to meet them there and arranged for doctors and hospitalization. Upon completion of this emergency service, Shaw made an official report of the incident on the regular train dispatcher's sheet. Shaw continued in his employment in the dispatcher's office until November 15, 1951. During this time, for almost twenty months, he had access to all of the records therein. Until some time in 1951, Shaw was also employed in the office of Butcher as a law clerk.

■ Shaw attacks the information on the ground that it states only that "John D. Shaw was employed by the Alaska Railroad, a government agency," and not that he had "been employed in any agency of the United States." Exception was also taken on the ground that the court instructed the jury that the "government must prove beyond a reasonable doubt * * * that the defendant was employed by a *governmental agency*, the Alaska Railroad." (Emphasis supplied.) These are most tenuous objections. The Alaska Railroad is owned by the United States and is operated as an agency of the United States.[2]

Counsel for defense was asked to stipulate "that the Alaska Railroad is a Governmental agency" and answered:

"Mr. Davis: I would suggest that the Alaska Railroad is owned and operated by the Government. I do not know whether it can be considered a Governmental agency, that may be a technical term."

The court was then asked to take judicial notice that, under 48 U.S.C.A.,[3] "The Alaska Railroad is established as a Governmental agency" but it directed proof be taken on the matter. John E. Manley, the witness on the stand, testified he had been Assistant General Manager of the Alaska Railroad since 1949, and also testified to the following facts to which counsel for defense stipulated: that the Secretary of the Interior "is the head of the Department of the Interior," that the Alaska Railroad receives "all of its instructions" "from the office of the Territorial Government, Department of the Interior," which is under "The Office of the Secretary of the Interior." This was certainly sufficient basis for giving the instruction above noted.

■ The court also read the statute to the jury down to the penalty clause, including the words, "whoever, having been employed in any agency of the United States," and told the jury thereafter:

"You are instructed as a matter of law that the Alaska Railroad is a governmental agency within the meaning of the above quoted statute. You are further instructed as a matter of law that a claim against the United States as used in said statute, means a demand against the Government for money or property."

2. See Ballaine v. Alaska Northern Railway Co., 9 Cir., 259 F. 183, 185, 8 A.L.R. 990, which held that a tort claim could be brought against the railway, since "the United States, in acquiring the stocks and bonds and property of the Alaska Northern Railway Company, acted in its sovereign capacity, and in exercising entire control, possession, ownership, and management, has merely employed the corporate organization as an agency through which to execute the purposes of the statute."

3. 48 U.S.C.A. § 301 et seq., popularly known as the "Alaska Railroad Act."

The present objection that the statutory words, "agency of the United States," were not used and the colloquial phrase "governmental agency" was substituted is captious. Obviously, in Alaska "government" means United States in colloquial parlance. In the civil action above referred to, there was an attempt to recover from the United States because of claimed negligence of employees of the Alaska Railroad as an agency of the United States, as the record of the instant case proves. There was no other government involved in the prior civil case or this criminal case except the government of the United States. A glance at the present record shows that all attorneys, the witnesses and the presiding judge used the word "government" not only as synonymous with "United States" but almost exclusively as shorthand to designate "the government of the United States." The evidence in this case makes it perfectly clear and without contradiction that Shaw was an employee of the Alaska Railroad and that this entity was an agency of the United States. This could have been decided as a question of law. There was no error in failure to instruct the jury as to the meaning of "agency" or failing to define "government" as "United States."

Defendant urges that the information does not use the statutory words "prosecutes" or "for prosecuting." As has been noted above, the court read the statute in part to the jury, as well as the text of the information, and read the words from the statute "prosecutes or acts as counsel, attorney, or agent for prosecuting." The court told the jury that the government must prove each of the following elements, among others, beyond a reasonable doubt, to-wit:

"That the defendant prosecuted or acted as counsel, attorney, or agent for prosecuting a claim against the United States;

"That the claim which defendant prosecuted or for which he acted as counsel, attorney, or agent in prosecuting, involved subject matter directly connected with defendant's former employment or service with the Alaska Railroad;

"That the defendant prosecuted or acted as counsel, attorney or agent for prosecuting such claim within two years after his employment with the Alaska Railroad had ceased."

The technical answer to this point is short. Defendant did not except to the failure of the court to define these words and did not present any requested instruction defining either. But the real answer is practical. If the jury found that the defendant did the acts described in the information, as a matter of law, he was either prosecuting the action or acting as an attorney, counsel or agent for prosecuting the claim against the government. There can be no doubt that a person who allows his name to be placed on a complaint as attorney for plaintiff in an action is prosecuting the underlying claim as a matter of law. Since this fact is admitted, the finding was correct and the conclusion was inevitable. It made no difference whether defendant did more or not. But the record shows he did a great deal more in investigating and interviewing witnesses and serving subpoenas. It is implicit in the record that he persisted therein up to the time there was a suggestion from others that he was acting illegally. Only a short time before trial, he signed a document on August 27, 1952, associating George B. Grigsby, Esq., as an additional attorney in the cause. His former employer said that, in the event of recovery, he had intended to pay Shaw a part of the fee and to be very liberal in the division. He cannot avoid the fact that Shaw was prosecuting the action now on appeal on the basis that so far there is no recovery and therefore no fee to him.

The information proceeds:

"That between the dates of March 24, 1950, and March 22, 1952, said period being within two years of the date when the said John D. Shaw left the employ of the Alaska Railroad, the said John Shaw acted as counsel and agent for plaintiffs in

the preparation of a suit against the United States on behalf of persons injured in the aforementioned accident.

"That from March 22, 1952 until January 20, 1953, said period being within two years of the date when the said John D. Shaw left the employ of the Alaska Railroad, the said John D. Shaw acted at attorney and agent for plaintiffs in the case of George Dushon et al. v. United States, Civil No. A–7605, a suit against the United States brought by the said John D. Shaw and others on behalf of various persons who sustained injuries in the aforementioned accident on March 24, 1950."

The objections to this portion of the information are numerous, as follows: (a) The basic statute [4] does not cover claims in tort; (b) the "claim" in the Dushon case did not involve "any subject matter directly connected with which" Shaw "was so employed or performed duty." [5]

The first contention is that the statute does not cover a tort claim against the United States, which the claim of Dushon was. In United States v. Bergson, D.C., 119 F.Supp. 459, a former employee of the Department of Justice, within the time limited, appeared as counsel for private clients and attempted to obtain letters of clearance for them from the Anti-Trust Division of that Department. A verdict was directed for defendant on the ground that the statute above cited was intended to embrace claims against the government for money or property. Without deciding the soundness of the Bergson case, we find it has no application to the case at bar, because the Dushon claim was for money. The theory of defendant that 5 U.S.C.A. (1940 Ed.) § 100 and 41 U.S.C.A. (1940 Ed.) § 119 were revised and codified without substantive change as 18 U.S.C.A. § 284 and did not include such claims as that of Dushon because the Tort Claims Act, 28 U.S.C.A. § 2674, had not been passed at the time of the

enactment of the codified sections is without merit. The present criminal statute includes all claims against the United States for money, in any event. It is true that, prior to the passage of the Tort Claims Act, most claims of that nature were presented to Congress for relief by special act. These were nonetheless claims against the United States. The process became so burdensome that general legislation was enacted whereby such claims were presented to the District Courts rather than to Congress.

■ The Tort Claims Act recognizes that there are "claims" as distinguished from "actions", for this legislation confers on specified courts "exclusive jurisdiction of civil actions on claims against the United States for money damages." [6]

Another point upon which great emphasis is laid has no basis whatsoever. It has been noted above that the court instructed the jury that the government must prove beyond a reasonable doubt that the claim that Shaw acted as counsel, attorney or agent in prosecuting "involved subject matter directly connected with defendant's former employment or service with the Alaska Railroad." The information alleges, as above noted, "that John D. Shaw was directly connected with and performed duties relating to an accident" therein described, and subsequently "acted as attorney and agent for plaintiffs" in a suit against the United States on behalf of various persons who sustained injuries in the aforementioned accident. On this subject, both the information and the instruction are perfectly plain. It was a question of fact left to the jury by the trial judge. The language of the information and that of the instruction are unambiguous. Defendant did not ask that any of these terms be defined. The point that was urged was that there was a failure of proof. It is contended that Shaw was not "directly" connected with the accident and that the accident could not be the subject matter involved in the claim upon which suit was predicated.

---

4. 18 U.S.C.A. § 284.

5. 18 U.S.C.A. § 284.

6. 28 U.S.C.A. § 1346(b).

■ The undisputed facts show that Shaw, as Assistant Chief Dispatcher, was the supervisor of the operation of both the north and the south boards at the time of the collision, that he took direct charge thereafter, arranged for the hospitalization of the injured, rendered a report to the government agency, upon which an investigation was founded, and had access then and for a long time thereafter to all of the sources of information and records available to the agency itself. To say, either as a matter of fact or law, that the collision or accident was not the subject matter of the claim upon which the suit against the United States is founded is to deny meaning to words. The contention that the claim was based upon negligence and that Shaw was not directly connected with the negligence is mere quibbling. Besides, there were in evidence the files of the Dushon case, which can be interpreted as claiming negligence in connection with the office of the dispatcher. One of the allegations of that complaint which bore the name of Shaw was that "the defendant, United States of America and its officers, agents and employees at the time of said collision were negligent in enforcing its own rules and regulations with regard to the movement of trains on the lines of the Alaska Railroad and in using an inadequate, loose and slipshod system and method of informing its employees * * *." [7] Butcher, who tried that case, testified in effect that all the employees of Alaska Railroad were treated as employees for whose defaults the government would be liable. From his explanation at the Shaw trial, it is obvious that the subject matter of the Dushon case was directly connected with Shaw's employment and service as Acting Chief Dispatcher for the Alaska Railroad.[8]

"I never intended and had no thought that there was any fault in the Dispatcher's office or I would have said so. I did know that when the dispatcher sent his line-up out he usually sent it to the telegraph operators. The telegraph operators then would convey it to the section foreman. I know that on numerous occasions section foremen write the line-up down and pass it to gas car operators. Now, assume that in the very dangerous and inherently dangerous aspect of the moving of trains, direct information is the only information that ought to be relied upon, and knowing that a good deal of the information passed on to gas car operators was indirect to the remotest degree, maybe third and fourth hand, I—knowing that this accident had happened as a result of somebody not receiving information as to the movement of that train or the movement of that gas car, I assumed that somebody down the line,

7. Transcript of Record, page 127.

8. This view is affirmed by the following excerpt from plaintiff's exhibit number 3, the amended complaint in the Dushon action:

"That the injuries suffered by the plaintiff as aforesaid, were caused by the gross negligence and carelessness of the defendant, its officers, agents and employees, acting within the scope of their employment, and by the gross negligence and carelessness of the said corporations heretofore named, their officers, agents and employees, in the following particulars:

* * *

"4. That the defendant, United States of America, and its officers, agents and employees, at the time of said collision, were negligent in enforcing its own rules and regulations with regard to the movement of trains on the lines of the Alaska Railroad, and in using an inadequate, loose and slip-shod system and method of informing its employees, including the said Harold D. Greene, who were entitled and required to receive such information, of the daily movement of trains on the lines of the said Alaska Railroad.

"5. That said collision resulted by reason of the negligence of the defendant in failing to employ and use an adequate and efficient method and system of informing its employees of the movements of trains on the Alaska Railroad, in consequence whereof the said Harold D. Greene was not informed of the approach of the train which collided with the gas car and attached trailers operated by him, as hereinbefore alleged, * * *"

some section foreman or the wife of some section foreman or some section-hand, had made a mistake in writing the line-up and that was what I had reference to and that is what we proved or attempted to prove in the case." Transcript of Record, page 184.

The orders and the line-up came from the office of the dispatcher, and one of the charges of negligence was the failure to get this information correctly to Greene, an employee of a contractor, who was driving the gas car moving in the opposite direction toward the point of collision.

■■■ The defense proposed four instructions, each of which the court refused. This action is assigned as error.

The first request reads:

"You are instructed that the subject matter of the claim in the Duschon case is the claim of right of the injured persons to be compensated for injuries received by them through the alleged negligence of the Alaska Railroad. In order to find the defendant guilty as charged in the information, you must find that his employment or duty was directly connected with the alleged negligence which resulted in the injuries complained of."

While the record contains evidence that Shaw, as Assistant Chief Dispatcher, was directly connected with the orders and train lists, the transmission of which Dushon claimed was negligent and therefore the giving of this instruction would not have deflected the jury from the verdict of guilty, still, as has been pointed out above, "subject matter," as used in the statute, cannot be thus narrowly construed. The "subject matter" which was involved in the "claim against the United States" was the collision. There was no error in the refusal.

■■■ The second request reads:

"In law, the word 'directly', as used in these instructions, means 'without anything intervening', not by secondary but by direct means."

Therefore, you are instructed that in order to find that the defendant's employment or duties were directly connected with the subject matter of the Duschon claim, you must find that the defendant's relationship to the negligence alleged in that claim was direct, without anything intervening, and that his connection was primary and not secondary."

This is an attempt to have the word "directly" connected with "negligence," a word which the statute does not employ. The claims of negligence could not be stated without "involving" the "subject matter directly connected with which" Shaw "was so employed or performed duty."

■■■ The third request reads:

"You are instructed that nothing subsequent to the instant of the wreck or accident with which the Duschon claim was concerned can have any bearing on the defendant's guilt or innocence in the present case. You are therefore instructed not to consider any acts of the defendant in backing up the train to Anchorage from the scene of the accident and the duties he performed in connection therewith."

This proposal is clearly erroneous. The acts of defendant subsequent to the collision were vital to the case of the government. He sent these men to the hospital, where the lawyer by whom he was employed interviewed them. He made out the report of the collision. He had access to the records of the Alaska Railroad. Where better could Butcher have found whether the train lists and the orders were correctly transmitted to Greene, the driver of the gas car in the collision?

■■■ The fourth request reads:

"You are instructed that in this case, as in all criminal cases, the statute involved must be strictly construed in favor of the defendant and against the Government. If, under the application of the rule of strict construction, you find that the de-

fendant is not guilty as charged in the information or if you have any reasonable doubt as to his guilt under the information, then your verdict must be not guilty."

The strict construction of a statute is not a proper matter upon which to charge a jury as an abstraction.

Even an apprentice lawyer should have known enough about the ethics of our profession to have resigned his clerkship when his lawyer employer took into the office a series of investigations as to the injuries of persons incurred in a collision in which he, the apprentice, had played a prominent part. Such dual allegiances are not permissible in the profession. Certainly Shaw was in a dubious position. His loyalty to the public service in which he was employed should have never been questioned.

Of course, this conduct was not the subject of the information. The comment is made because of suggestion that Shaw did not know of the existence of the statute. This previous line of conduct explains and throws light upon his action in preparation of the suit after he left the employ of the Alaska Railroad and culminated in the prosecution of the Dushon suit against the United States with his name on the complaint. His intent is shown by his previous conduct and by his active participation in the action up to the time that there were rumors of his prosecution on account thereof.

All of the claims of error by Shaw are thus disposed of with one exception. However, exception was taken to the giving of instruction number 5. This instruction we hold to be erroneous. It reads:

"The law presumes every person charged with crime to be innocent and, hence, the defendant is entitled to the benefit of this presumption until it has been overcome by evidence beyond a reasonable doubt. This rule as to the presumption of innocence is a humane provision of the law intended to guard against the conviction of innocent persons, but it is not intended to prevent the conviction of any person who is in fact guilty or to aid the guilty to escape punishment."

This Court has heretofore disapproved the last clause of this identical instruction here attacked.[9] There is no retreat from that position. We now reaffirm our previous stand. In the Reynolds case the instruction might have meant the difference between conviction and acquittal on a charge of murder, where there was a claim by defendant that deceased was a suicide and a plea of self defense. There was undoubtedly sufficient evidence to sustain a conviction, but there was no eyewitness to the tragedy and the evidence was almost entirely circumstantial. There this instruction was not only erroneous, but highly prejudicial. In Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239; 90 L.Ed. 1557, the court reversed a criminal conviction where the indictment charged a single conspiracy because the facts seemed to give ground for a finding of several conspiracies with a single individual forming the connecting link. In doing so, a test was laid down for reversal or affirmance where there is plain error in the record.

"In the final analysis judgment in each case must be influenced by conviction resulting from examination of the proceedings in their entirety, tempered but not governed in any rigid sense of *stare decisis* by what has been done in similar situations. [Citing case.] Necessarily the character of the proceeding, what is at stake upon its outcome, and the relation of the error asserted to casting the balance for decision on the case as a whole, are material factors in judgment. * * *

"If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the

9. Reynolds v. United States; 9 Cir., 238 F.2d 460.

judgment should stand, except perhaps where the departure is from a constitutional norm or a specific command of Congress." Kotteakos v. United States, 328 U.S. 750, 762, 764–765, 66 S.Ct. 1239, 1246.

█ If this test be applied in the case at bar, the judgment must stand. Here there was practically no dispute of fact. If the case had been tried by a court, there must have been a judgment of conviction. The questions of law raised must all have been determined against defendant, as has been above noted. The instructions are not a magical formula, any deviation from which is necessarily fatal on appeal. The trial may be held to be unfair to a defendant when formalism is rigidly observed. But nothing requires this Court to release a defendant obviously guilty because there has been a deviation from a standard of absolute perfection, but where we can affirmatively say the defendant has suffered no harm thereby. The fact that the jury did not exercise the power of pardon, which is within their prerogative in the face of overwhelming factual evidence of guilt under the statute, is not reason for saying that the condemned clause could have had influence on the result.

█ It is for this reason that this Court has meticulously reviewed the trial to show the unsubstantiality of the alleged errors of law and the conclusive evidence of guilt. Although the trial judge did not comment on the facts to the jury and specifically warned them that they should disregard his attitude in the case, it must nevertheless be remembered that a federal trial judge has a right to sum up and comment on the evidence. This factor must always be considered in viewing instructions given

by a judge in this system. In the state courts, where the rule is to the contrary, much more attention must be paid to technical exactness of language.

The accused instruction is still valid in many jurisdictions. It has been used considerably in the last many years and a great many men are suffering or have suffered punishment after a trial in which this instruction was given. As counsel for defendant remarked in taking exception, the judge in the case at bar customarily had given the same instruction for a long period of time. It is one of those instructions which gets into the file of a trial judge and is treated as stock. Most of the cases where an instruction of this type has been criticized have not disapproved its content.[10]

Our acute awareness of the rights of a defendant has discovered that such an instruction might mislead a jury in a case where the facts are in doubt, as was the situation in Reynolds v. United States.[11] But we are not bound to reverse in every case where the instruction may have been given, notwithstanding the obvious guilt of the defendant and the overwhelming weight of facts which are not even contested. Our disapproval of the instruction stands. This Court should never be required to pass again on a case where such an instruction or a substantially similar one has been given.

█ It is obvious, neither the trial judge nor the jury was prejudiced against defendant. The jury recommended leniency. The trial judge fined the defendant $100.00 as a total penalty. There was no error prejudicial to defendant.

The conviction is affirmed.

10. See, for example, cases cited in Reynolds v. United States, supra Note 9; United States v. Farina, 2 Cir., 184 F.2d 18, certiorari denied 340 U.S. 875, 71 S.Ct. 121, 95 L.Ed. 636; Moffit v. United States, 10 Cir., 154 F.2d 402, certiorari denied 328 U.S. 853, 66 S.Ct. 1343, 90 L.Ed. 1625; People v. Henderson, 378 Ill. 436, 38 N.E.2d 727; State v. Medley, 54 Kan. 627, 39 P. 227; State v. Hanlon, 38 Mont. 557, 100 P. 1035. Cf. Gomila v. United States, 5 Cir., 146 F.2d 372, where a similar instruction was given and the decision was reversed on account of a "cumulation" of error.

11. Supra Note 9.