**People of the State of Illinois, Plaintiff-Appellee, v. Joseph Dowling, Defendant-Appellant.**

Gen. No. 51,805. (Consolidated with Gen. 51,804.)

First District, Second Division.

May 7, 1968.

Gerald W. Getty, Public Defender of Cook County, of Chicago (George L. Lincoln, Norman W. Fishman, and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago, for appellee.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

After a jury trial defendant was found guilty of the crime of armed robbery and was sentenced to a term of 25 to 50 years in the penitentiary. He appeals.

The evidence shows that Mr. and Mrs. Abe Artstein, the complaining witnesses, owned a two-flat building on the northwest side of Chicago and occupied the second-floor apartment as their residence. The first-floor apartment was rented to a doctor. In the early afternoon of February 18, 1966, the Artsteins were in their apartment waiting for the arrival of a taxicab they had summoned earlier, when the doorbell rang. Mrs. Artstein released the vestibule security door by means of a buzzer in the apartment and proceeded to the front door of the apartment which she opened slightly. She requested the identity of the caller and saw two men, later identified as the defendant and his companion, John Elwell, proceeding up the stairs. They stated they were friends of Mr. Artstein and requested to speak with him. As the men approached the apartment door, Mr. Artstein appeared at the door and both men drew pistols. The Artsteins were forced inside the apartment where they were made to lie on the floor and were bound, Mrs. Artstein with tape and Mr. Artstein with handcuffs. The Artsteins were threatened with harm and were ordered to turn over their money and other valuables to the men. One of the men removed the handcuffs from Mr. Artstein and retied his hands with neckties, and the men left. Mrs. Artstein freed herself, the police were summoned and a description of the men given to them.

On March 4, 1966, Mr. and Mrs. Artstein were again in the apartment and were informed by their daughter that two men were in the hallway of the building. A

scratching noise was heard at the door and the police were called. A short while later a gunshot was heard and Mrs. Artstein looked out the apartment window to see one of the men, the defendant, being placed under arrest. Mrs. Artstein recognized him as one of the men who had robbed her and her husband two weeks earlier, opened the window and communicated this fact to the arresting officer. The other man, John Elwell, was being carried from the building on a stretcher suffering from a gunshot wound in the head, from which he later died. Pistols were recovered from both defendant and Elwell and both were identified by the Artsteins as the weapons used by the men during the robbery in February. Elwell was wearing a wristwatch taken from Mr. Artstein in the robbery and a handcuff key was recovered from the defendant. Defendant was later again identified by the Artsteins at a police lineup as one of the robbers.

Defendant denied having had anything to do with the robbery of the Artsteins on February 18th, and claimed that the date of his arrest was the first time he was ever at the Artstein building; defendant claimed, but was not allowed to testify, that the reason he went to the Artstein building on March 4th was to procure "goof balls" from the doctor who lived on the first floor. Defendant also claimed, but again was not permitted to testify, that Elwell, some time prior to his death, informed defendant that Elwell and a man named Abrogotz committed the Artstein robbery.

The investigating police officer, Donald Kenny, testified that he questioned defendant on the date of the arrest concerning the February 18th robbery and that defendant stated, "I know nothing about a robbery, all you have me for is attempt burglary. I was backing up a man in a burglary." The officer also questioned defendant about his leg, and defendant informed the officer that he had injured it in an automobile accident; the Artsteins had previously described one of the robbers as walking with

a limp. Defendant denied he told anyone his foot was injured in an accident. The officer also testified that footprints in the snow outside the Artstein building found the day of the robbery bore the name "Stuart Holmes" on the heel, and that shoes found in an apartment allegedly belonging to defendant, two days after his arrest, bore the same inscription on the heels.

Defendant first contends that the State should not have been allowed to introduce the testimony of Officer Kenny that defendant admitted he was backing up a man in a burglary.

██ No objection was raised at the time the testimony was given by the officer, although the answer to the very next question, concerning defendant's limp, was objected to by the defense. Defendant was represented by counsel of his own choosing. It is well established that failure to object to otherwise incompetent evidence at the time of trial results in a waiver of the objectionability of that evidence, and the question cannot be raised on appeal, People v. Trefonas, 9 Ill2d 92, 98–99, 136 NE2d 817. Nevertheless, its admission into evidence caused no prejudice to defendant in light of the overwhelming evidence of his guilt.

The cases cited by defendant in support of his position are inapposite on their facts. People v. Cordes, 391 Ill 47, 62 NE2d 465, involved a situation where the testimony of the prosecuting witness was not clear and convincing with respect to the intent of defendant to commit rape, and consequently evidence given by another witness, that on the same night that defendant was alleged to have committed the crime charged he exposed himself to the witness and expressed a desire to have sexual intercourse, was held inadmissible and prejudicial. In People v. Fuerback, 66 Ill App2d 452, 214 NE2d 330, the witness gave a lengthy and highly specific and detailed account of another crime allegedly committed by defendant at a time when his evidence showed he was at

226

his mother's home; that evidence was understandably held inadmissible and prejudicial. Neither of those situations is analogous to the situation presented in the case at bar.

■ Defendant also contends that he was unduly restricted in the development of his defense by the trial court's refusal to allow him to testify that Elwell and some third person had committed the Artstein robbery, as related to defendant by Elwell before his death, on the grounds that the proffered testimony was hearsay. The evidence is patently hearsay and the trial court properly denied its admission into evidence. See People v. Smuk, 12 Ill2d 360, 146 NE2d 32.

Defendant cites People v. Lettrich, 413 Ill 172, 108 NE2d 488, in support of his position that the hearsay rule should not have been applied under the circumstances of this case. In Lettrich, a confession challenged by the defendant as having been coerced from him and certain undisputed evidence known to the court which did not coincide with portions of the confession, prompted the court to relax the hearsay rule. Lettrich was a case of special circumstances, the court recognizing the rule that the unsworn extrajudicial declaration of a deceased or otherwise unavailable third party is hearsay and is therefore inadmissible, but nonetheless holding, at page 178, that where it is "obvious that justice demands a departure . . . it would be absurd . . . to indiscriminately apply such a rule to prevent one accused of a crime" from showing that another person was the perpetrator. Here, on the other hand, there is overwhelming evidence of defendant's guilt, especially the direct, unequivocal and unimpeached testimony of the two eyewitness victims who had ample time and opportunity to observe the robbers.

■ Defendant attacks the State's Instruction #1, which deals with the presumption of innocence, and states that its wording implies that the presumption obtains only when the jury believes a defendant is inno-

cent and further implies that guilt is present. We disagree. An instruction worded substantially the same as State's Instruction #1 was subjected to the same criticism in People v. Rees, 268 Ill 585, 109 NE 473, and the argument rejected.

The final point raised by defendant is that prejudicial error was committed by the Assistant State's Attorney during closing argument when he said that the shoes admitted into evidence and which bore the same heel markings as the footprints found outside the Artstein building were recovered from defendant's apartment, whereas there was no competent evidence that the shoes were recovered from his apartment. The record discloses that defendant failed to object to this line of argument. Furthermore, there is evidence in the record establishing that Officer Kenny found the shoes "at the apartment of Mr. Dowling . . . on the 6th of March."

For these reasons the judgment is affirmed.

Judgment affirmed.

McNAMARA and LYONS, JJ., concur.