No. 44,720

STATE OF KANSAS, *Appellee,* v. WILLIE J. BARNES, *Appellant.*

(446 P. 2d 774)

Opinion filed November 9, 1968.

*Leonard D. Munker,* of Wichita, argued the cause and was on the briefs for the appellant.

*Russell E. Grant,* Deputy County Attorney, argued the cause, and *Robert C. Londerholm,* Attorney General, *Keith Sanborn,* County Attorney, and *Reese C. Jones,* Deputy County Attorney, were with him on the briefs for the appellee.

The opinion of the court was delivered by

HATCHER, C.: This is an appeal from a judgment and sentence on a conviction of murder in the second degree.

The defendant was a part time employee of the Kitchen Club located in Wichita, Kansas. It would appear from the record that the club was a beer joint where the drunks congregated after the closing hour for legitimate taverns and put on a real brawl.

The state presented evidence in the form of testimony and exhibits which established that the following events occurred on October 9, 1965. The deceased, Calvin Franklin, went to the Kitchen Club located in northeast Wichita with a friend in the early morning of October 9, 1965. Willie J. Barnes, the defendant, was there performing some of the duties of a helper. A fight occurred between the deceased and a man named Donald McDonald. The deceased drew a small .22 calibre pistol and fired several times in the direction of McDonald. There was at least one other gun being fired in the establishment at the same time. Four people were injured by at least two different calibre bullets. It appears that there were at least five people at the club with pistols.

At the time the gun was being fired by the deceased, McDonald struck him with a stool top knocking him down. After the deceased was hit the gun disappeared from his hand. It was not found by

the police. While the deceased lay on the floor defendant took a gun, proceeded from behind the bar approaching the deceased from the direction of his feet and shot him twice, one shot striking him at the waist line below the left rib cage traveling upward and to the right lodging almost exteriorly near the right nipple area. Another shot struck him in the left buttocks lodging near the spine. The defendant then left the premises and went to his home. Before he was arrested the defendant discarded his gun which was purported to be a .38 calibre Smith and Wesson. It was not found by the police.

The defendant was charged with murder in the first degree and a trial to a jury resulted in a verdict of murder in the second degree.

Before considering the alleged errors presented by appellant it should be suggested that we have noted the state's objection to consideration of the questions because of procedural omissions. However, we are of the opinion that the interests of the parties will be best served by a consideration of the appeal on the merits.

The appellant first contends that the trial court erred, as a matter of law, in instructing the jury as to first and second degree murder because the evidence was not sufficient to establish the elements of such offenses.

In addition to the facts heretofore stated there was additional evidence. An employee of the club who was working behind the bar with the appellant testified:

"Yes, I heard some shots and a girl at the counter fell to the floor at my feet. She said, 'get down by me.' I said, 'No, I want to see what is going on.' Two or three guns were shooting then. I couldn't tell what was happening. I couldn't tell who or where everybody was going. So by that time I looked—I looked—I heard someone say, 'kill him, kill him.' I still didn't know what was going on. At that time I looked and Willie was coming behind me with a gun in his hand. He stepped over the girl lying on the floor and went around the counter that way. I watched him. He was going towards the bathroom. When he got almost to the bathroom I saw someone that looked like he had a white coat or jacket on lying on the floor."

The witness also testified that the appellant was shooting but he could not tell what at.

Another witness who was present at the brawl testified:

"A. I didn't see Mr. McDonald any more. Franklin was firing the gun. Haile Scott ran around out of here and snatched him out of the booth and they wrestled him out of the booth until they got here, and then Haile Scott took the gun from him.

"Q. He took the gun from Franklin?

"A. Yes, when Franklin went to raise up Mr. Barnes shot him. In other words, Mr. Barnes walked right around through the crowd of people while they were wrestling and when Franklin went to get up he shot him and he fell back and then he shot him again. Scott sat there for a while with Franklin's head pretty close to his lap. Franklin tried to say something to him but I don't think he made it. Then he went out the back door."

We have no hesitancy in concluding that the evidence was sufficient to go to the jury on the question of "willful, deliberate and premeditated killing" constituting murder in the first degree under the provisions of K. S. A. 21-401. Certainly it was sufficient to go to the jury on the question of the offense being "'committed purposely, maliciously, but without deliberation and premeditation" constituting murder in the second degree under the provisions of K. S. A. 21-402—the offense for which the appellant was convicted.

The appellant next contends that the trial court failed to accurately and explicitly set out and define the essential elements of murder in the first and second degree.

We cannot agree. The appellant would isolate certain instructions for the purpose of criticism. This court has laid down the rule that instructions to the jury must be considered as a whole. (*State v. Oswald,* 197 Kan. 251, 417 P. 2d 261.) We do not propose to extend this opinion by reproducing all of the instructions. It will suffice to state that the instructions when considered as a whole sufficiently state the elements of the two degrees of murder.

The appellant objects to the court submitting the issue of second degree manslaughter to the jury. The appellant contends that there was not a "scintilla of evidence that would require such a charge."

The court instructed the jury in the language of K. S. A. 21-412 as follows:

"Under a statute entitled 'Killing After Resisting Attempt to Commit a Felony,' the law of Kansas provides that every person who shall unnecessarily kill another, either while resisting attempt by such other person to commit any felony, or do any other unlawful act, after such attempt shall have failed, shall be deemed guilty of Manslaughter in the second degree."

The appellant erroneously assumes that the court instructed under K. S. A. 21-411 dealing with killing in the heat of passion but in a cruel and unusual manner which also constitutes manslaughter in the second degree. We find no error in submitting the issue of manslaughter in the second degree as provided by K. S. A. 21-412.

We find no merit in appellant's contention that the trial court erred in its instructions on the burden of proof and presumption of innocence.

The language complained of is essentially the same as that contained in *State v. Medley*, 54 Kan. 627, 39 Pac. 227, and found by this court to fairly state the reason for the rule as to presumption of innocence and not to be misleading or prejudicial.

The appellant last complains that the bailiff who took charge of the jury when the cause was finally submitted was not sworn as required by K. S. A. 20-312.

The complaint might be serious if supported by the record but it is not.

On the presentation of the motion for a new trial the following colloquy took place between the trial court and counsel for appellant:

"The next one, my recollection is the Bailiff was not sworn when he took the jury in charge. The record will have to show that. I want the transcript for that purpose. I haven't seen the transcript. That is my recollection. When the jury retired to the jury room the Bailiff was not sworn to take charge of the jury.

"THE COURT: The Court Reporter had been deputized and sworn in the absence of the regular Bailiff.

"MR. SOWERS: But the Court did not instruct the Court Reporter as to his duties in regard to acting as Bailiff.

"THE COURT: Yes, that was done."

There being nothing to the contrary we must assume that the trial court knew what it had done.

A careful examination of the record discloses no prejudicial error which would justify the granting of a new trial.

The judgment is affirmed.

APPROVED BY THE COURT.