Danny J. **CARRILLO**, Appellant
(Defendant below),

v.

The **STATE** of Wyoming, Appellee
(Plaintiff below).

No. 3826.

Supreme Court of Wyoming.

Sept. 9, 1970.

Raymond B. Whitaker, Casper, for appellant.

James E. Barrett, Atty. Gen., Donald L. Painter, Sp. Asst. Atty. Gen., Cheyenne, for appellee.

Before GRAY, C. J., and McINTYRE, PARKER, and McEWAN, JJ.

Mr. Chief Justice GRAY delivered the opinion of the Court.

The defendant, Danny J. Carrillo, was found guilty by a jury of the crime of assault with a deadly weapon and sentenced to a term in the penitentiary of from four to six years. He appeals. In his brief he assigns as error four separate incidents occurring in the conduct of the trial, but in oral argument to the court two of the points relied upon were waived and there is now before us the claim that the court erred (1) in giving Instruction No. 8 pertaining to the presumption of innocence, and (2) in refusing to grant plaintiff's motion for mistrial when a State's witness testified concerning prejudicial previous acts of the defendant against different people which had no relation to the crime charged.

By way of background, the record discloses that defendant's conviction grew out of an altercation on the evening of February 21, 1969, between the defendant, who was then 15 years of age, and Mike Genoff, of the same age, at the time Genoff accompanied by three young ladies was coming out of a theater. The defendant admits that he was the perpetrator and aggressor of the first encounter between the two when a few blows were struck; but as might be anticipated from the defendant's claim of self-defense, the testimony with respect to what happened shortly thereafter in an alley when defendant stabbed Genoff in the abdomen with a knife is most conflicting. There was, however, an abundance of substantial evidence to support the verdict of the jury.

Turning to the contention that the trial judge erred in giving Instruction No. 8, and keeping in mind our oft-repeated pronouncement that the instructions must be considered as a whole, it will be helpful to

set out first Instruction No. 7, which also dealt with the presumption of innocence and was as follows:

"YOU ARE INSTRUCTED that the defendant is presumed to be innocent of the crime charged against him until he is proven guilty beyond a reasonable doubt. This presumption of the defendant's innocence accompanies him throughout the trial and goes with the jury in their retirement and deliberation in the jury room, and the evidence must be examined in the light of such presumption, and it entitles the defendant to an acquittal unless it is overcome by such evidence as to satisfy the jury of the defendant's guilt beyond a reasonable doubt."

This was then immediately followed by Instruction No. 8, to which defendant excepted, reading as follows:

"YOU ARE INSTRUCTED that the rule which clothes every person accused of crime with the presumption of innocence and imposes upon the State the burden of establishing his guilt beyond a reasonable doubt *is not intended to aid anyone who is in fact guilty to escape,* but is a humane provision of the law, intended insofar as human agencies can, to guard against the danger of any innocent person being unjustly punished. To establish the guilt of a defendant beyond a reasonable doubt is not meant that such guilt shall be established to an absolute certainty. Absolute certainty in the establishment of any fact is rarely attainable, and never required in courts of justice." (Emphasis supplied.)

It is the above-emphasized phrase upon which defendant levels his attack.

In this connection it should be noted that subsequent to the time that defendant's brief was filed in this case and prior to argument we had occasion, in the case of Kennedy v. State, Wyo., 470 P.2d 372, 373, 375, to review an identical instruction and although recognizing that it would be improper "to add a self-defeating qualification" to an instruction on the presumption of innocence, we nevertheless held that this instruction when considered together with an instruction identical to Instruction No. 7 above was not subject to criticism in that respect and was not erroneous. In view of that decision, counsel for the defendant was in somewhat of a dilemma as to whether or not argument on the contention here was foreclosed.

In the discussion that ensued, however, it was pointed out that the mandate in Kennedy had not yet gone down and counsel was informed that we were not averse to giving further consideration to the question, particularly in view of a recent decision of the Colorado Supreme Court in Martinez v. People, Colo., 470 P.2d 26, wherein that court condemned—with one minor exception—the use of an identical phrase in an instruction. Thereupon the point was fully argued, is again before us, and we have given it full and careful consideration.

In Kennedy, which is still before us on a petition for rehearing, as well as here, the defendant relies heavily on the case of Reynolds v. United States, 9 Cir., 238 F.2d 460, and in addition of course upon the Colorado decision which was not available at the time of argument. Perhaps the first thing that needs to be done in this case is to reconsider the discussion in the Kennedy opinion, at page 376, wherein it was indicated that use of the phrase "for the purpose of aiding the guilty to escape punishment" as a part of an instruction on the presumption of innocence was approved in the Reynolds case. As therein reflected, the conclusion was drawn for the reason that the Reynolds opinion, at page 463, did contain a general discussion relating to the development of the rule on the presumption of innocence and therein it was agreed that the rule was not developed for the purpose of aiding the guilty to escape punishment. However, what seems to have been overlooked was the more precise discussion that followed concerning the implication that could be drawn by a jury from the inclusion of that language in an instruction. In addition, it appears that any obscurity as to what the court in Reynolds intended to reach as an

improper qualification of the rule was removed in the later case of Shaw v. United States, 9 Cir., 244 F.2d 930, 938. In that case the court again had before it the identical instruction given in Reynolds that ended with the clause "but it is not intended to prevent the conviction of any person who is in fact guilty *or to aid the guilty to escape punishment*" (emphasis supplied), and of this it was said, "This Court has heretofore disapproved the last clause of this identical instruction here attacked," citing the Reynolds case. Consequently, confessing our shortcomings, we now retract any indication that the Kennedy instruction "followed what was approved in Reynolds" and recognize Reynolds as authority to the contrary.

That is not to say, however, that we now go into full retreat from our holding that the Kennedy instruction was factually and legally correct. There are two sides to this question. The view that the phrase under discussion is misleading and erroneously qualifies the presumption, which defendant's counsel describes as an "enlightened" view, recognizing that "the law is changing as times, customs and people change," of course finds support in the Ninth Circuit cases, supra; in the Fifth Circuit in the case of Gomila v. United States, 5 Cir., 146 F.2d 372; in the State of Mississippi as reflected in Chinn v. State, Miss., 210 So.2d 666; and in the Martinez case, supra. In addition, we call attention to the case of State v. Romeo, 42 Utah 46, 128 P. 530 (decided in 1912), wherein the Utah court in no uncertain terms castigated the use of the phrase in an instruction on the rule.

On the other hand, the view we took in Kennedy, which the State advances with much justification as the majority view, finds support in the Tenth Circuit in the case of Moffitt v. United States, 10 Cir., 154 F.2d 402, certiorari denied 328 U.S. 853, 66 S.Ct. 1343, 90 L.Ed. 1625, in the Second Circuit in United States v. Farina, 2 Cir., 184 F.2d 18, certiorari denied 340 U.S. 875, 71 S.Ct. 121, 95 L.Ed. 636, rehear-

ing denied 341 U.S. 928, 71 S.Ct. 795, 95 L. Ed. 1359; in early Illinois cases such as People v. Lenhardt, 340 Ill. 538, 173 N.E. 155, reaffirmed in the recent case of People v. Dowling, 95 Ill.App.2d 223, 238 N.E.2d 131; in an early Kansas case, State v. Medley, 54 Kan. 627, 39 P. 227, reaffirmed in the recent case of State v. Barnes, 202 Kan. 21, 446 P.2d 774; in the Indiana case of Turner v. State, 102 Ind. 425, 1 N.E. 869; in the Idaho case of State v. Farnsworth, 51 Idaho 768, 10 P.2d 295; in the Montana case of State v. Hanlon, 38 Mont. 557, 100 P. 1035; and in the Nevada case of State v. Gee Jon, 46 Nev. 418, 211 P. 676, 30 A.L.R. 1443, rehearing denied 217 P. 587. And see 23A C.J.S. Criminal Law § 1221, p. 560, where it is said without qualification:

> "It is proper for the court to instruct the jury that the presumption of innocence is not intended to aid those actually guilty but to prevent an innocent person from being convicted."

It is apparent from the foregoing authorities that the divergent views of the courts with respect to the question before us are irreconcilable. Contrary to defendant's contention that there is an "enlightened" view or a modern trend to classify the phrase used in Instruction No. 8 as a "self-defeating qualification," we think the foregoing further demonstrates that there is no basis for such a contention. What we have are simply the plausible views of a great number of able jurists supporting both sides of the question. That, of course, makes difficult the decision we are impelled to render as a matter of first impression, such instruction not having been passed upon by this court prior to the Kennedy case despite the fact that it has for years been used as a standard instruction by the district courts.

■ One thing we note, however, and the one thing impressing us in the Kennedy case, was the lack of dissent to the view that the rule on presumption of innocence was *not* developed for the purpose of aiding the guilty to escape punishment. The conflict is whether or not it is proper so to ad-

vise the jury in an instruction. It was our initial impression that when a jury was fully instructed with respect to the rule, as it was here by Instruction No. 7 and by the same instruction in the Kennedy case, and instructed as to the meaning of "reasonable doubt," it was not improper or misleading by way of a further instruction to explain to the jury the purpose that the rule on the presumption of innocence was designed to accomplish. Even though we have again fully considered all of the reasoning and arguments underlying the divergent views, we remain unpersuaded that our holding in Kennedy was incorrect in view of the abundance of authority supporting it, and as a consequence the contention here made with respect to use of the phrase under discussion in Instruction No. 8 is rejected.

Defendant's second claim of error is based upon the testimony of the State's witness, Shirley Geist, then 15 years of age, given in response to a question by the prosecuting attorney on its case in chief as to how she had met the defendant. Her response was:

> "Well, I was in the lobby of the America theater, and the usher was talking to Danny [the defendant] and some of his friends, I assume, and people were throwing things inside the theater, and the usher was trying to find out who it was, and I was just joking around. First, Danny said, 'Well, I got hit with something on the head,' and I was joking around with him; and I said, 'Well, I did it.' And he told me to shut up or he'd knife me."

Preceding this incident Genoff had testified to a difficulty he had had with the defendant inside the theater on that same night, February 14, 1969, wherein defendant had said to Genoff, "Let's go to the alley and knife-fight." The prosecutor readily concedes that the question was preliminary to a line of questioning on the material issue of malice. The defendant, however, objected to the testimony on the ground that it was unrelated to that issue and constituted an attack upon the defendant's character, which was not then in issue.

■ The same contention is advanced here and in this connection we first point out that the answer was not elicited as the result of misconduct on the part of the prosecutor inasmuch as the inclusion therein of the statement concerning defendant's admonition to the witness to "shut up or he'd knife me" was wholly voluntary. Even assuming that the statement was inadmissible, which is a broad assumption in the light of our holding in Valerio v. State, Wyo., 429 P.2d 317, 318, under somewhat similar circumstances, we are not persuaded that the error, if any, in the trial judge's ruling was prejudicial. Immediately following the conclusion of the witness's testimony the trial judge advised the jury that such statement was inadmissible but that he nevertheless was denying the motion for mistrial. This was immediately followed by an instruction given at defendant's request that such testimony was stricken and the jury was told to disregard it. That ruling, it seems to us, was most favorable to the defendant, and in view of the defendant's own admissions and the abundance of evidence to support the jury's finding on malice, which we mentioned above, we think the defendant was afforded all of the protection to which he was entitled under the circumstances.

Affirmed.

Mr. Justice McEWAN, concurring.

I concur in the result because I would make the use of Instruction No. 8 prospectively reversible error. The instruction is not a good statement of the law and I would condemn its future use.