**William A. E. LOFTON, Appellant**
**(Defendant below),**

v.

**STATE of Wyoming, Appellee**
**(Plaintiff below).**

No. 3965.

Supreme Court of Wyoming.

Oct. 28, 1971.

Harry Leimback, Casper, for appellant.

Clarence A. Brimmer, Atty. Gen. and William L. Kallal, Asst. Atty. Gen., Cheyenne, for appellee.

Before McINTYRE, C. J., and PARKER, McEWAN, and GRAY, JJ.

Mr. Justice PARKER delivered the opinion of the court.

William A. E. Lofton was convicted by a jury of aggravated robbery under § 6–66, W.S.1957, sentenced five to eight years in the penitentiary, and has appealed, charging three errors:

1. Refusing of defendant's challenge of the jury array;

2. Failing to exclude a pistol and money from evidence;

3. Instructing that the presumption of innocence was not intended to aid anyone who was in fact guilty to escape.

The ultimate facts which led up to the conviction are not in dispute. On Saturday, July 5, 1969, shortly after 10:20 p. m., two black males entered the North Center Mini Mart in Casper. After briefly walking around inside the store they approached the check stand and cash register. One identified as "the man with the beard" drew a pistol from his jacket pocket, passed it in front of the store manager at the register, put it in his other pocket, holding it through his jacket on the manager, took out a paper bag, and told the store manager to "fill it up." After the manager had complied, taking the one, five, and ten-dollar bills from the drawer, the other man, described as wearing a green sweat shirt and not having a beard, had the manager lift the drawer for the twenty-dollar denomination bills. (After counting the register the following day, the manager reported approximately five hundred dollars was taken.) As they left the store, the man in the green sweat shirt told the manager, "Don't call the police for ten minutes or we will kill you." The manager notified the police, and as a result, they issued an all-points bulletin over the state radio. As received by the Newcastle police department, this contained the following information:

"State Item No. 2587. July 5, 1969. Pick up and hold for armed robbery, two

male negroes, No. 1, Male, Negro, American, 25, six foot, 155 pounds. Wearing full beard and brown checkered type waist jacket and brown slacks. No. 2 Male Negro American, five feet 11, 150 pounds, clean shaven, wearing green sweat shirt. No further descriptions. Subjects should have about $500.00 in 20 dollar bills. Driving black station wagon with white plates. State and number unknown. Use code 10–50. Authority Casper Police Department. July 6, 1969, added information. Subjects possibly driving black Oldsmobile two door, Nebraska license number unknown."[1]

At approximately 2 a. m., Sunday, July 6, Officer Hopkins of the Newcastle police saw a dark Oldsmobile with two black occupants driving through Newcastle, noticed that it had Nebraska license plates, followed it, calling another policeman to assist him, and apprehended the occupants, Terry Lee Anders and the defendant, at the edge of Newcastle, taking them to the jail. A search resulted in discovery of $251 in one, five, ten, and twenty-dollar bills on Lofton and $293 in similar denominations on Anders. Lofton said he had a billfold in the car, which had been locked by the officers and towed to the police department by a wrecker. The billfold was found to contain $32. The Casper Police Department was advised; and about 3:30 a. m. the Mini Mart manager, accompanied by two Casper policemen, left for Newcastle. After they arrived there at approximately 7 a. m. the manager positively identified Anders as the man with the beard and said that the two men appeared to be the same ones who had robbed him. He

and the officers went out to the car, which Anders said belonged to him, and saw a green sweat shirt on the rear seat like that worn by one of the robbers. They opened the car with the keys which had been taken from Anders and found a loaded .32 caliber Smith and Wesson pistol under the driver's seat on the floorboard. They took possession of both the pistol and the green sweat shirt. Thereafter the Casper officers returned with the prisoners to Natrona County.

We have carefully reviewed defendant's argument that the trial court erred in refusing a challenge of the jury array. His initial premise, based on Norris v. Alabama, 294 U.S. 587, 55 S.Ct. 579, 79 L.Ed. 1074, is that if he can demonstrate, (a) the existence of a substantial number of blacks in the community, and (b) their total or virtual exclusion from jury service, he has made out a prima facie case of discrimination and the burden then shifts to the State to prove the exclusion did not flow from discrimination. We think he misreads the Norris case, which on its face discloses that the reason for the decision was not the mentioned two criteria alone but rather that the court's review of the *evidence* showed a systematic exclusion of blacks from jury service solely because of their race and color. Likewise careful perusal of all other cases cited by defendant as authority[2] indicates that each such opinion stems from *evidence* of systematic and intentional exclusion of some group and not merely from the fact that there are numbers of the group in the community and there is a lack of their members on the jury array. Mr. Justice Jackson stated the principle very well in Fay v.

1. According to the Casper officer who authorized the state item, the information was obtained from the manager with the exception of the portion concerning the Oldsmobile with Nebraska license which had come from Sergeant Harvey of the Casper Police Department, who earlier in the day had seen two black males, one with a large bushy beard in an Oldsmobile. His attention had been drawn to them when he was passing the Uptown Motel on Center Street in Casper because the

back portion of their vehicle was sticking into traffic.

2. Turner v. Fouche, 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567; Whitus v. Georgia, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599; Avery v. Georgia, 345 U.S. 559, 73 S.Ct. 891, 97 L.Ed. 1244; Thiel v. Southern Pacific Co., 328 U.S. 217, 66 S.Ct. 984, 90 L.Ed. 1181, 166 A.L.R. 1412; Rabinowitz v. United States, 5 Cir., 366 F.2d 34.

New York, 332 U.S. 261, 284, 67 S.Ct. 1613, 1626, 91 L.Ed. 2043, when he said, "It is fundamental in questioning the composition of a jury that a mere showing that a class was not represented in a particular jury is not enough; there must be a clear showing that its absence was caused by discrimination * * *." [3] Thus, defendant's premise is faulty and the charge without merit. Even so, the matter should not be passed without noting the unfortunate method by which the attack on the jury array was launched, without any information as to the number of persons eligible for jury service and solely on a request for the court to take judicial notice of the census population together with affidavits based on surmise and recollection as to number of jurors on the panel during the past years, the places where residents lived, and their occupations. Although criticism of the administration of justice when bottomed on facts is salutary, it becomes detrimental if as here the only basis is suspicion and opinion.

■ As to the defendant's allegation that the jury array was contrary to various statutory requirements, he argues—noting the provisions of § 18–105, W.S.1957, which prescribes as a duty of the county assessor that he ascertain jury qualifications of each person assessed and from all private persons within the county whom he believes possess the legal qualifications of jurors, and of § 18–107, W.S.1957 (1971 Cum.Supp.), requiring the assessor to make up a jury list—that if these statutes were followed the jury list would include people owning real property, people owning only personal property, and people *not on the assessment rolls at all.* We cannot agree with his assumption concerning a listing of persons not on the assessment rolls since it overlooks the provisions of § 1–77, W.S. 1957 (1971 Cum.Supp.), containing as one qualification of a juror that he be "Assessed on the last assessment roll of the county." All of the statutes relating to jurors must be considered in pari materia.

During the trial the court overruled objections which defendant interposed to the introduction in evidence of the .32 caliber pistol found by the officers on the floor of Anders' car and to the money which was taken from Lofton. These rulings are attacked as reversible error on three asserted grounds: (1) since the arresting officer did not have probable cause to make an arrest, the evidence was "the fruit of the poisonous tree"; [4] (2) the determination that the defendant did not have standing to contest the unlawful search under the Fourth and Fourteenth Amendments to the United States Constitution was improper; and (3) the pistol was introduced without proper foundation.

■ We question the correctness of defendant's assertion that the arresting officers did not have probable cause to make an arrest. We recognize that an arresting officer must be shown to have been acting on facts constituting probable cause [5] and that the standards applicable to the factual basis supporting an arresting officer's probable cause assessment at the time of an arrest are as stringent as the standards applied with respect to a magistrate's

---

3. At the time trial was set for hearing, the defendant filed a motion challenging the jury array from which the jury was to be selected because it did not include a fair cross section of the property owners of the county and specifically that it was contrary to various statutory requirements. In support of the motion he offered certain papers which had been filed in a similar challenge by another defendant under criminal charge, the tenor thereof being statements of opinion as to the proportion of black population in the coun- ty. He also called for questioning the person who had been bailiff for some thirteen years and posed questions to him regarding his memory of the number of blacks on past panels together with interrogatories concerning the identity and residences of persons on the current array.

4. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441.

5. Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142, 148.

assessment,[6] but we cannot see any valid basis for defendant's claim that here probable cause was found only after an illegal arrest and search. Although defendant contends that the information possessed by the Newcastle police at the time of the arrest was even less than the information possessed by the Laramie police at the time of arrest and search in Whiteley v. Warden, Wyoming State Penitentiary, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306, we view his position as without merit. In Whiteley the initial impetus for the arrest was an "informer's tip," and the court said, 91 S. Ct. at 1036:

> " * * * the record is devoid of any information at any stage of the proceeding from the time of the robbery to the event of the arrest and search that would support either the reliability of the informant or the informant's conclusion that these men were connected with the crime. * * * "

Here the description of the men came from the store manager who was robbed and his description of Anders fit that of one of two black males earlier observed by a Casper policeman in an Oldsmobile with Nebraska plates. It is axiomatic that information from various sources can be considered in the aggregate when determining whether or not probable cause exists.

Defendant also insists, relying upon Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777, that as to the gun taken from the car the search was illegal because it was not contemporaneous in time nor place to the arrest. It will be recalled that in the Preston case the original arrest was made for vagrancy whereas the latter charge which concerned the Supreme Court was that of conspiracy to rob a federally insured bank, an entirely different offense. Judge Black, who wrote the Preston opinion, some three years later in Cooper v. California, 386 U.S. 58, 59, 87 S.Ct. 788, 17 L.Ed.2d 730, said, "We made it clear in Preston that whether a search and seizure is unreasonable within the meaning of the Fourth Amendment depends upon the facts and circumstances of each case * * *." (Emphasis supplied.) Incidentally, the Cooper case points up the fact that if a search of a car is justified by facts and circumstances a delay in the search is not necessarily fatal. The facts as recited in that opinion were that the conviction rested on, in part, the introduction in evidence of a small piece of a brown paper sack seized by the police without a warrant from the glove compartment of a car which the police, upon petitioner's arrest, had impounded and held for a week. The court ruled that the police did not violate the Fourth Amendment by making a search of the car, pointing out that the search was closely related to the reason for petitioner's arrest. Somewhat similar was the case of Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419, where the main question was the admissibility of evidence received from an automobile in which petitioner was riding at the time of his arrest after the automobile had been taken to a police station and thoroughly searched without a warrant. In that instance there had been a robbery with currency taken from the cash register of a service station. One of the two robbers had been wearing a green sweater, the other a trench coat. A description of the robbers and the car was broadcast over police radio and within an hour a station wagon answering the description and carrying four men was stopped by the police. In the course of a complete search of the car at the station the police found in a compartment under the dash two .38 caliber revolvers. The principal issue in the case was the admissibility of this evidence. The court held that it was properly admitted, calling attention to the reasonableness of the search and the fact that delay in the search was not fatal. In the instant situation, we hold there was no error in the admission of the gun. We do not overlook

6. Whiteley v. Warden, Wyoming State Penitentiary, 401 U.S. 560, 91 S.Ct. 1031, 1036, 28 L. Ed.2d 306.

**1174** 

defendant's contention that the pistol was introduced without adequate foundation because the person who was threatened by it could not positively identify it, he having seen nothing more than the barrel or the handle. Such an argument is tenuous in the extreme, and we find nothing in the cited cases which indicates that a positive identification of a gun under such circumstances is essential to the introduction of the instrument in evidence. If this were to be the rule it would from a practical standpoint, and considering the fear of the person threatened, render impossible the introduction of a deadly instrument.

 Defendant also charges error of the trial court in instructing that the presumption of innocence was not intended to aid anyone who was in fact guilty to escape but is a humane provision of the law intended insofar as a human agency can to guard against the danger of any innocent person being unjustly punished. Little could be added to our rather extended discussion of this question in the case of Kennedy v. State, Wyo., 470 P.2d 372, 375–376, and in Carrillo v. State, Wyo., 474 P.2d 123, 125–126. The former opinion held that this was a correct statement of the law and the latter that we were unpersuaded of any incorrectness in our views on the subject in the Kennedy case. While adhering to those views, we are not unmindful of criticism lodged against the instruction in which Mr. Justice McEwan seems to have joined, 474 P.2d at 126; and in order to avoid future contentions of impropriety, it is respectfully suggested to the trial courts that the probable difficulties, which will be caught up and proliferated in future cases, outweigh any benefit accruing from the instruction. To that end it might well be avoided.

Affirmed.

Mr. Justice GRAY, dissenting.

The majority has rejected the contentions of the defendant on the basis that the contentions were without merit and in turn affirmed the judgment entered by the trial court. Consequently, I would question that whatever views I might express would ultimately have any effect upon the end result. There is, however, some duty here, as I view it, to make known the reasons why I am persuaded that a new trial should have been granted and thus for my purposes I will confine my discussion to the error made by the trial judge in admitting into evidence a pistol that came to the State as a result of an illegal search of the subject automobile.

That ruling was based, of course, upon the trial judge's view that the defendant had no standing to raise this critical question relating to search and seizure, which the Attorney General concedes was erroneous. Nonetheless, the State insists that the ruling was rendered harmless inasmuch as the arrest and the search of the automobile were made upon probable cause. I will reluctantly go along with the argument pertaining to the arrest but I cannot agree with the argument that there was probable cause for the subject search. For instance, it is uncontroverted that the Newcastle police made no search of the vehicle at the time and place where it was stopped and the warrantless search was made several hours later by the Casper police at the Newcastle police station. It was that search which resulted in the seizure of the pistol and the use of it as evidence by the State at the trial.

So far as I am concerned this is a classic example of the police circumventing the basic and fundamental requisites of the need for a search warrant under the Federal Constitution where, as here, the record does not disclose the existence of any circumstances that justify the substitution of the police for the magistrate in determining the existence of probable cause. Granted, there may be exigencies presented in connection with mobile vehicles but such is not the case here. To so hold would for all intents and purposes take away whatever protection is afforded by the constitutional provisions and that is not in keeping with my concept or my reading and understanding of the proper approach to the

question as reflected by recent pronouncements emanating from the United States Supreme Court. It is true that the members seem to have difficulty in reconciling their views as reflected in Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564, but absent exigencies there is much unanimity in the holdings reflected by the statement contained in Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 1979, 26 L.Ed.2d 419, rehearing denied 400 U.S. 856, 91 S.Ct. 23, 27 L.Ed.2d 94, stating as follows:

> "Even so, the search that produced the incriminating evidence was made at the police station some time after the arrest and cannot be justified as a search incident to an arrest: 'Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest.' Preston v. United States, 376 U.S. 364, 367, 84 S.Ct. 881, 883, 11 L.Ed.2d 777 (1964). Dyke v. Taylor Implement Mfg. Co., 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968), is to the same effect; the reasons that have been thought sufficient to justify warrantless searches carried out in connection with an arrest no longer obtain when the accused is safely in custody at the station house."

I would add a few comments with respect to the absence of any emergency or exigency. To me it seems clear that the search of the automobile was not incident to the arrest; there could be no reasonable belief that the contents of the vehicle or the jurisdiction over the vehicle would be lost; there was no knowledge of the existence of the pistol in the vehicle or even when discovered there was nothing disclosed by the circumstances which would support a belief that lives were endangered by the presence of the pistol in the locked vehicle which in turn was in the exclusive control of the police; and lastly no excuse was even offered at the trial attempting to justify the warrantless search when in fact there was ample time and opportunity to present the matter to the magistrate. To say the least, I think a substantial doubt is raised with respect to such search and perforce as the matter now stands it must be decided against the State.

Thus, I would give no credence to the claim that the ruling on the admission of the pistol into evidence could be upheld by resort to the doctrine of harmless error. See Chapman v. State of California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, 24 A.L.R.3d 1065, rehearing denied 386 U.S. 987, 87 S.Ct. 1283, 18 L.Ed.2d 241. Consequently, I am persuaded that the ruling was prejudicial and can be corrected only by the granting of a new trial.