James F. WESTWOOD, Appellant (Defendant),

v.

The STATE of Wyoming, Appellee (Plaintiff).

No. 83–202.

Supreme Court of Wyoming.

Jan. 15, 1985.

---

Leonard D. Munker, State Public Defender, Wyoming Public Defender Program, Cheyenne, for appellant.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Cr. Div., John Renneisen, Sr. Asst. Atty. Gen., and Terry J. Harris, Asst. Atty. Gen., for appellee.

Before THOMAS *, C.J., and ROONEY **, ROSE, BROWN and CARDINE, JJ.

THOMAS, Chief Justice.

The major issue asserted in this case is whether there was sufficient authentication of a pair of school scissors to justify their admission into evidence as the instrumentality of the crime in a trial on a charge of aggravated assault and battery. A secondary issue is raised concerning the sufficiency of the evidence of the appellant's ability, in light of evidence of alcohol or controlled substance intoxication, to form the intent necessary to sustain a conviction of unauthorized use of a motor vehicle. We conclude that the record supports the ruling of the district court in admitting the scissors into evidence. The record also encompasses evidence which structures a question of fact as to the impact of the appellant's intoxication upon his ability to form a specific intent, and this question was submitted to the jury under a proper instruction. We affirm the judgment and sentence of the trial court imposed after appropriate verdicts of guilty by the jury.

In his brief Westwood states the issues as follows:

"1. Whether the trial court erred in admitting into evidence the scissors in State's Exhibit 1.

"2. Whether the evidence as to the necessary element of intent was insufficient to sustain the conviction on the unauthorized use of an automobile charge."

The State of Wyoming agrees with Westwood's statement of the issues in this case.

The facts of this case are illustrative of why citizens in our society are becoming

---

* Became Chief Justice January 1, 1985.

** Chief Justice at time of oral argument.

increasingly reluctant to assume the role of a Good Samaritan. On April 4, 1983, two young female school teachers were returning to Casper from an Easter vacation trip to Montana. The weather was inclement, possibly approaching blizzard conditions. Near Midwest they observed a man flagging them down, and after they stopped they ascertained that his car was hopelessly stuck in a snowdrift in the median between the two lanes of the interstate highway. They offered him a ride into Casper, which he accepted, and after securing his vehicle he got into the car with the two young ladies.

As they were traveling south to Casper at one point he laid his hands on the young women's faces, ostensibly to demonstrate how cold he was, but this action caused some feelings of intimidation on their part. He then said that he wanted them to return him to his vehicle so that he could obtain some of his personal effects. Because of the weather the driver, who also owned the car, demurred and later refused to attempt to turn around and go back to Westwood's vehicle. Westwood then became more insistent, demanding and even belligerent. Alarmed by his behavior, the driver pulled off the road and asked him to get out of the car. At that juncture he began striking her and stabbing her with a pair of school scissors. The young women then exited the vehicle and ran away from it, fearful of their lives. Westwood moved to the driver's seat and drove off.

The two young teachers were able to flag down a passing truck, and the driver agreed to let them ride into Casper. As they entered Casper they fortuitously observed Westwood go by. The truck driver followed the car briefly and then pulled into the Smart Stop, a gasoline station and convenience store, to permit the owner of the vehicle to notify the police. While they were inside, Westwood drove the car up to the gas pumps, and the truck driver pulled his rig in front of it while the assistant manager of the store moved his vehicle behind it to immobilize the car. Westwood then was apprehended by police officers. They conducted an investigation at that location, and obtained a pair of school scissors with sharp points from the vehicle which Westwood had taken.

Following his arrest Westwood was charged with aggravated assault and battery in violation of § 6–4–506(b), W.S.1977,[1] and in a second count he was charged with a violation of § 31–11–102, W.S.1977.[2] After being bound over at his preliminary examination Westwood was arraigned in the district court. He entered pleas of not guilty and not guilty by reason of mental illness or deficiency and then was sent to the Wyoming State Hospital for an examination and evaluation. After he returned to Casper he was tried by a jury and convicted of both counts. He then was sentenced to not less than two nor more than six years imprisonment in the state penitentiary on the aggravated assault charge, and a concurrent sentence of one year in the Casper jail on the unauthorized use of a

---

1. Section 6–4–506(b), W.S.1977:

"(a) *Without dangerous weapon.*—If any person shall unlawfully and maliciously inflict upon another person, any grievous bodily harm the person so offending shall be fined not more than one thousand dollars ($1,000.00) or be confined in the county jail not more than one (1) year, or both.

"(b) *With dangerous weapon.*—Whoever, while armed with a dangerous or deadly weapon including an unloaded firearm, maliciously perpetrates an assault or an assault and battery upon any human being, shall be fined not more than one thousand dollars ($1,000.00), or be imprisoned in the penitentiary not more than fourteen (14) years, or both."

2. Section 31–11–102, W.S.1977:

"Any person who without specific authority of the owner or his duly authorized and accredited agent willfully, wantonly, or maliciously takes possession of, or drives, propels or takes away, or attempts to take possession of, drive, propel, or take away an automobile, the property of another, for the purpose of temporarily making use of the automobile, or who knowingly aids, abets or assists another in so doing, upon conviction, is guilty of a misdemeanor and shall be punished by imprisonment in county jail for not more than one (1) year."

motor vehicle count also was imposed. Westwood's appeal is from that judgment and sentence.

Westwood first protests the admission into evidence of State's Exhibit Number 1, a pair of school scissors. (Actually the exhibit was an envelope in which the pair of school scissors had been placed.) The argument presented by Westwood is that there was insufficient authentication of the scissors. The Wyoming Rules of Evidence serve as our point of departure for the discussion of this issue. While authentication is controlled by Article IX of the Wyoming Rules of Evidence, the problem appropriately is considered as one of relevance under Rule 402, W.R.E.,[3] and even more specifically whether the condition of fact, i.e., that the object in question is what its proponent claims, has been satisfied as required by Rule 104(b), W.R.E.[4] See 5 Louisell and Mueller, Federal Evidence, § 505, p. 12 (1981). The pertinent provisions of Rule 901, W.R.E., provide:

"(a) *General provision.*—The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

"(b) *Illustrations.*—By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:

"(1) Testimony of Witness with Knowledge.—Testimony that a matter is what it is claimed to be;

\* \* \* \* \* \*

"(4) Distinctive Characteristics and the Like.—Appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances;"

3. Rule 402, W.R.E., provides as follows:
"All relevant evidence is admissible, except as otherwise provided by statute, by these rules, or by other rules prescribed by the Supreme Court. Evidence which is not relevant is not admissible."

4. Rule 104(b), W.R.E., provides as follows:

The record discloses that at the time she was stabbed the victim looked down and Westwood had school scissors in his hand. He hit her with the scissors at least twice in her recollection, once in the right shoulder and again closer to her neck. The scissors penetrated her winter coat and T-shirt and broke her skin. At the time Westwood was apprehended the officer showed the scissors to the victim. He asked her if those were the scissors, and she said that they were.

An officer for the Casper Police Department saw the scissors in the defendant's possession at the Smart Stop. He also saw a female police officer for the Casper Police Department take them from Westwood. He then witnessed that officer turn them over to a deputy for the Natrona County Sheriff's Department. This police officer described them as an elementary school type of scissors, perhaps four or five inches long. The deputy for the Natrona County Sheriff's Department testified that he took possession of a pair of scissors at the Smart Stop. They were given to him by the female officer for the Casper Police Department. He took them to the Natrona County Sheriff's Department and placed them in the evidence locker. The envelope which was marked as State's Exhibit 1 is the envelope in which he placed the scissors when he put them in the evidence locker in the sheriff's department.

With the record in this state the trial court refused to admit the scissors into evidence over the objection of Westwood. The victim then was recalled, and she testified in this vein:

"Q. I am going to show you what has been marked as State's Exhibit No. 1 and ask you if you recognize any portion of that exhibit?

"A. Yes, I do.

"(b) *Relevancy conditioned on fact.*—When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a inding of the fulfillment of the condition."

"Q. And what do you recognize?

"A. Those are the scissors that I was stabbed with.

"Q. On how many occasions have you seen them?

"A. The only other time I saw them was when the officer asked me to identify them.

"Q. And where was that at?

"A. At the Smart Stop here in Casper."

With this additional testimony the trial court then admitted the scissors in evidence as State's Exhibit Number 1.

■ The commentaries with respect to the article concerning authentication and identification in the Federal Rules of Evidence after which the Wyoming Rules of Evidence are patterned indicate that no dramatic change was intended by the codification of the rules respecting authentication. It is said Rule 901 "assumes the survival of the careful skepticism characteristic of the common law, under which the proponent must prove that a matter is what he claims it to be, even if its appearance or content is consistent with that claim. But the burden is not a heavy one, and the most significant provision in the Rule—that contained in subdivision (b)(4) on circumstantial authentication—goes as far toward generalizing the principle of self authentication as would be possible without abandoning altogether the basic premise that some sort of authenticating proof should be required." 5 Louisell and Mueller, Federal Evidence, p. 12 (1981). A proper interpretation of the provisions of Rule 901, W.R.E., with respect to authentication should preserve the bias in favor of admissibility which is manifested in Rule 401, W.R.E., et seq., relating to relevancy and admissibility, as well as in other related rules. *International Merger and Acquisition Consultants, Inc., v. Armac Enterprises, Inc.,* 531 F.2d 821 (7th Cir.1976); *Conway v. Chemical Leaman Tank Lines, Inc.,* 525 F.2d 927 (5th Cir.1976), on rehearing 540 F.2d 837 (5th Cir.1976), appeal after remand 610 F.2d 360 (5th Cir.1980), reh. denied 614 F.2d 1298 (5th Cir.1980), new trial granted on remand 487 F.Supp. 647 (E.D.Tex.1980), order at 87 F.R.D. 712 (E.D.Tex.1980), affirmed 644 F.2d 1059 (5th Cir.1981), reh. denied 650 F.2d 282 (5th Cir.1981), appeal after remand 687 F.2d 108 (5th Cir.1982), reh. denied 693 F.2d 133 (5th Cir.1982); 1 Louisell and Mueller, Federal Evidence, § 91, p. 639 (1981). See *McCabe v. R.A. Manning Construction Company, Inc.,* Wyo., 674 P.2d 699 (1983); *Lee v. State,* Wyo., 556 P.2d 217 (1976) (Thomas, J., specially concurring), and authorities there cited; 5 Louisell and Mueller, Federal Evidence, § 507, p. 31 (1981).

■ This court held prior to the adoption of the Wyoming Rules of Evidence that in considering the admission of controlled substances the State has the burden of showing that there is a reasonable certainty the evidence has not been tampered with or altered and that it is the evidence upon which the prosecution bases its case. Further quoting from 22 C.J.S., Criminal Law, § 712, p. 961, and cases there cited, the court adopted the proposition that a prima facie showing of identity in connection with the crime is necessary and sufficient to warrant the admission into evidence of the instrument or weapon as the one with which a crime was committed, and that generally positive proof or positive identification is not required. *DeLuna v. State,* Wyo., 501 P.2d 1021 (1972). In *Lofton v. State,* Wyo., 489 P.2d 1169 (1971), cert. denied 406 U.S. 949, 92 S.Ct. 2049, 32 L.Ed.2d 337 (1972), the court had held that a positive identification of a firearm as the one with which an armed robbery had been committed is not required. The standard appears to be that adopted in *Friesen v. Schmelzel,* 78 Wyo. 1, 318 P.2d 368 (1957), which is that the article may be received if it is satisfactorily identified, and it is shown to the satisfaction of the court that there is no substantial change in the article which would render the evidence misleading. In our judgment these requirements were satisfied with respect to the school scissors. Our reading of the record persuades us that the district court properly could have admitted the scissors upon the basis of the

768

testimony of the two police officers alluded to previously.

■ In an abundance of caution, however, the trial court also required further identification by the victim. In *United States v. Johnson*, 637 F.2d 1224 (9th Cir. 1980), the court held that testimony which was not entirely free from doubt, but to the effect that the witness was pretty sure that the ax in question was the weapon the defendant used against him, that he saw the ax in the defendant's hand, and that he was personally familiar with this particular ax because he had used it in the past, was sufficient to satisfy the provision in Federal Rule of Evidence 901(a) that authentication as a condition of admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. That court held that the rule is satisfied once a prima facie case has been made on the issue. Similarly it is our conclusion that in this case there is testimony by witnesses with knowledge, i.e., the two police officers, that the scissors were taken from Westwood at the Smart Stop and were given to the deputy of the Natrona County Sheriff's Department, who placed them in the evidence locker. This is sufficient to support a finding that the scissors are what the proponent claims them to be. Furthermore, the appearance of the scissors taken in conjunction with the circumstances about which the witnesses testified leads to a conclusion of authenticity. We hold there was no error in admitting the scissors into evidence.

In his second argument Westwood points to testimony of the two school teachers to the effect that he had been indulging in alcohol or drugs, slurred his words, and appeared to be spaced out. Other testimony was that he was high, drunk and smelled like alcohol, and his actions were described as crazy. Westwood, of course, testified that he was on a three-day drunk prior to the commission of these offenses and that he had a history of alcoholism stretching over several years. Westwood contends that this evidence precludes the jury from finding that he was capable of forming the specific intent required for the offense of unauthorized use of an automobile. The State asserts the standard for examining evidence upon review which requires us to accept as true the evidence submitted by the State of Wyoming, giving that evidence every favorable inference which reasonably and fairly may be drawn from it, and leaving out of consideration entirely the evidence of the defendant in conflict with that evidence. The State's position is that when viewed in this light there is sufficient evidence to sustain the verdict of the jury.

We are satisfied in this instance that the question of the effect of Westwood's intoxication upon his ability to form a specific intent appropriately was submitted to the jury pursuant to Instruction Number 13, which advised the jury as follows:

"Voluntary intoxication is no excuse for the commission of a crime. However, pertinent portions of the Wyoming Statutes provide that 'Where a crime rests in intention, the inebriated condition of the Defendant at the time of committing the offense may be proved to the jury, as bearing upon the question of intention.' "Thus, evidence that a Defendant acted or failed to act while in a state of intoxication is to be considered in determining whether or not the Defendant acted, or failed to act, with specific intent as charged."

While there is no question that the evidence which Westwood alludes to was part of the record, there also is evidence that at the time he secured the ride from his victims Westwood had the presence of mind to shut off his lights and lock his vehicle. He was able to walk in a normal manner without difficulty. He was able to enter the back seat of a rather small vehicle without any problems. He spoke coherently during the course of the time he was in the victim's vehicle. He was able to comment upon events which were occurring while they traveled, including an opportunity to turn the vehicle around and go back north on the interstate in accordance with his

demands. He was able to drive the victim's vehicle from the point where he appropriated it into Casper. He did not seem to be abnormal in the observation of the police officer from the City of Casper.

Our examination of the record satisfies us under the circumstances that the claim of Westwood that the evidence was insufficient as a matter of law to permit a finding of an ability to form a specific intent is illfounded. The trial court properly submitted the question to the jury as a question fact, and it was resolved against Westwood. There is sufficient evidence in the record to sustain that determination.

The judgment and sentence of the trial court based upon the jury's verdicts of guilty on the two counts is affirmed.