2001 WY 8

**James Kirkpatrick POOL, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 99–241.

Supreme Court of Wyoming.

Jan. 29, 2001.

Representing Appellant: Sylvia L. Hackl, State Public Defender; Donna D. Domonkos, Appellate Counsel; Diane E. Courselle, Director, Defender Aid Program; and Guy Cleveland, Student Intern.

Representing Appellee: Gay Woodhouse, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Monique B. DuPont Armijo, Assistant Attorney General.

Before LEHMAN, C.J., and THOMAS, GOLDEN, HILL, and KITE, JJ.

THOMAS, Justice.

[¶ 1] In this case, the new issue for Wyoming is found in the claim of James Kirkpatrick Pool (Pool) that the plain language of Wyo.Stat.Ann. § 35–7–1031(c) (Lexis 1999) requires the State to prove the controlled substance was not "obtained directly from, or pursuant to a valid prescription or order of a practitioner while acting in the course of his professional practice" or "otherwise authorized by this act."[1] The other question presented in this case is the sufficiency of the chain of custody of the controlled substances seized at the time of Pool's arrest. The controlled substances were admitted without objection at trial, and review requires consideration of that error under the plain error doctrine. We hold that no error occurred with respect to the admission of the controlled substances into evidence, and the trial court correctly denied Pool's motion for judgment of acquittal. The Judgment and Sentence entered in the trial court is affirmed.

[¶ 2] This statement of the issues is found in the Brief of Appellant:

I. Whether the State failed to demonstrate with a reasonable certainty that the chain of custody of the evidence seized from Mr. Pool had not been altered or tampered with and thereby calling into question the integrity and trustworthiness of the evidence used to convict Mr. Pool.

II. Whether the statutory language making it unlawful to possess controlled substances unless the substance was obtained directly from or pursuant to a valid prescription or order is an essential element of the charged crime and therefore incumbent upon the State to prove beyond a reasonable doubt that, in fact, Mr. Pool was in possession of a controlled substance not obtained pursuant to a valid prescription or order.

This Statement of the Issues is found in the Brief of Appellee:

I. Whether a sufficient "chain of custody" was presented to support the admission of marijuana and methamphetamine seized from appellant.

II. Whether there is any merit to appellant's sufficiency of the evidence claim or to his proposed construction of Wyo.Stat.Ann. § 35–7–1031(c)(iii).

[¶ 3] On April 16, 1998, a Teton County deputy sheriff encountered a gray 1989 Volkswagen in the eastbound lane of Highway 22 near the bottom of Teton Pass, which Pool was driving. The Volkswagen had its hazard lights flashing, and was traveling very slowly. When the deputy sheriff approached, Pool drove the Volkswagen off the road and stopped. The deputy sheriff also pulled off the road behind the Volkswagen to see if Pool needed assistance. As the deputy sheriff approached the Volkswagen, Pool started to get out of the passenger side door.

[¶ 4] When they met, the deputy sheriff noticed that Pool had very bloodshot and glassy eyes, and appeared to be nervous and impatient. When the deputy sheriff asked for evidence of identification, Pool produced an inmate card from the Idaho State Board of Corrections. The deputy sheriff then determined, through the assistance of the Teton County Dispatch Center, that Pool's driver's license was suspended. The deputy

---

1. In that part relevant to this discussion, Wyo. Stat.Ann. § 35–7–1031(c) provides:

(c) It is unlawful for any person knowingly or intentionally to possess a controlled substance unless the substance was obtained directly from, or pursuant to a valid prescription or order of a practitioner while acting in the course of his professional practice, or except as otherwise authorized by this act.

sheriff asked Pool what he did time for, and Pool's reply was "trafficking." The deputy sheriff also had seen that the trunk lid to the Volkswagen was "punched."

[¶ 5] Pool attempted to return to the vehicle on more than one occasion during the encounter with the deputy sheriff, and the deputy sheriff became concerned about his safety. The deputy sheriff told Pool that he was not under arrest, but he asked Pool to turn around and place his hands behind his back interlocking his fingers. Pool complied with that direction, and the deputy sheriff then conducted a "pat down" search for weapons. In the course of the "pat down" search, the deputy sheriff felt several hard objects in the left vest pocket of Pool's jacket. The deputy sheriff asked permission to retrieve them, and Pool told him he could, but the deputy sheriff was not able to open the zipper on the pocket because it was on the inside of the jacket. He then asked Pool to remove the items and Pool did so. At that time, the deputy sheriff observed a baggy containing a green leafy substance that appeared to be marijuana, and asked Pool what was in the baggy. Pool told him it was marijuana.

[¶ 6] At that juncture, the sheriff deputy placed Pool under arrest for possession of a controlled substance. A further search of Pool's person incident to that arrest produced a second plastic baggy from his right front pocket, which contained what was subsequently identified as approximately 6.89 grams of methamphetamine, together with $656.51 in cash and coins. In the meantime, the deputy sheriff had called for assistance, and another officer arrived to provide a canine search of Pool's car. The canine officer had his dog sniff test the baggies at the scene and the animal alerted to both of them. Additionally, the dog alerted to the cassette in the tape deck in the vehicle.

[¶ 7] The deputy sheriff then placed the two baggies in the console of his patrol car where they remained during the drive to the Teton County jail. The deputy sheriff left them in his locked patrol car until he had finished processing Pool into the jail. He then retrieved the two baggies, and started the process of filling out the evidence logs and paperwork. At that time, he tested each substance, and the contents of the first baggy tested presumptively positive for marijuana, while the contents of the second baggy tested presumptively positive for methamphetamine.

[¶ 8] Pool was charged with one count of driving while his license was suspended in violation of Wyo.Stat.Ann. § 31-7-134(a) (Michie 1997), one count of possession of a controlled substance in violation of Wyo.Stat. Ann. § 35-7-1031(c)(i)(A), a misdemeanor, and one count of possession of a controlled substance in violation of Wyo.Stat.Ann. § 35-7-1031(c)(iii), a felony. Following a preliminary hearing before the justice of the peace, Pool was bound over for trial in the district court.

[¶ 9] Pool moved to suppress the evidence seized at the time of his arrest, and the trial court denied that motion. Pool was tried by a jury with verdicts of guilty being returned on all three counts. Subsequently, Pool was sentenced to a term of not less than two and not more than four years in the state penitentiary on Count 3; he was sentenced to a term of one year on Count 2, which sentence was made to run concurrently with the sentence on Count 3; and on Count 1, he was sentenced to the Teton County jail for a period of six months to run consecutively with the concurrent sentences for Counts 2 and 3. The trial court then ordered that the six month sentence on Count 1 would be deemed to have been served while Pool was awaiting trial and that sentence was deducted from his credit for pretrial confinement of 251 days, leaving a credit of seventy-one days on his prison sentence. Pool has appealed from the Judgment and Sentence of the trial court.

[¶ 10] We turn initially to Pool's second claim of error in which Pool contends that his motion for judgment of acquittal should have been granted because the State failed to prove that he did not have a valid prescription or order of a practitioner for the methamphetamine. The parties advance as a potential standard of review the proposition that the trial court will accept as true the evidence of the prosecution together with all logical and reasonable inferences that may be

drawn therefrom while leaving out any evidence to the contrary. *Smith v. State,* 959 P.2d 1193, 1197 (Wyo.1998) (*quoting Apodaca v. State,* 796 P.2d 806, 807 (Wyo.1990)). We agree with the augmentation of that standard of review found in the State's brief, in which it is suggested that Pool's claim does not raise a question of sufficiency of the evidence, but injects a question of law as to whether lack of a valid prescription or order of a practitioner is an element of the charged offense. If the lack of the prescription or order is an element of the offense, it is clear that no evidence about the absence of a prescription or order was offered by the State, and any reasonable juror must have had a reasonable doubt as to the existence of that element. *Smith,* 959 P.2d at 1197 (*quoting Leppek v. State,* 636 P.2d 1117, 1119 (Wyo.1981)); *Longstreth v. State,* 832 P.2d 560, 563 (Wyo.1992); *Chavez v. State,* 601 P.2d 166, 172 (Wyo.1979). We perceive the contention as raising a question of law which we review *de novo.*

[¶ 11] Pool relies upon *State v. Keating,* 30 Wash.App. 829, 638 P.2d 624, 626 (1981), for its holding that in order to carry its burden of proof, the State was required to demonstrate that the substance was illegally possessed by evidence that Keating did not have a prescription to justify lawful possession. Because of its failure to prove that the substance was not controlled by a prescription, the Washington court held that the State had failed to establish an essential element of the offense. *Id.* The State relies upon the provisions of Wyo.Stat.Ann. § 35–7–1050(a) (Lexis 1999), which provides:

> (a) It is not necessary for the state to negate any exemption or exception in this act in any complaint, information, indictment, or other pleading or in any trial, hearing, or other proceeding under this act. The burden of proof of any exemption or exception is upon the person claiming it.

The trial court relied upon this statute, and we uphold its ruling because the statute articulates the correct rule in Wyoming.

[¶ 12] Our holding is consistent with the rule adopted in the federal courts in construing a parallel provision of federal law, 21 U.S.C. § 844(a), and a similarly worded state statute, La.Rev.Stat. 40:961 *et seq.* (West 1992 and Supp.2001). *Woods v. Butler,* 847 F.2d 1163, 1167 (5th Cir.), *cert. denied,* 488 U.S. 970, 109 S.Ct. 502, 102 L.Ed.2d 538 (1988); *United States v. Forbes,* 515 F.2d 676, 680 (D.C.Cir.1975). The Wyoming controlled substance statute has been derived primarily from the federal statute, and we accept federal case law as persuasive authority in our determination of the intent of the Wyoming legislature. *Palato v. State,* 988 P.2d 512, 514 (Wyo.1999); *Apodaca v. State,* 627 P.2d 1023, 1027 (Wyo.1981); *Dorador v. State,* 768 P.2d 1049, 1053–54 (Wyo. 1989).

[¶ 13] Furthermore, the rule articulated in the Wyoming statute has been accepted by other states following the lead of *Forbes. E.g., Schuller v. State,* 625 N.E.2d 1243, 1246 (Ind.App.1993); *Burgin v. State,* 431 N.E.2d 864, 866 (Ind.App.1982); *State v. Rodriguez,* 554 So.2d 269, 270 (La.App.3d Cir.1989); and *Com. v. Pero,* 402 Mass. 476, 524 N.E.2d 63, 67 (1988). *See also State v. Everidge,* 77 N.M. 505, 424 P.2d 787, 790 (1967). We hold that the trial court did not err in refusing to grant Pool's motion for judgment of acquittal. It is not incumbent upon the State in prosecutions for violations of the Controlled Substances Act to prove a negative fact, i.e., that there was no prescription or valid order authorizing possession of the substance. In many instances, that would be an impossible burden for the State to assume.

[¶ 14] With respect to Pool's first claim of error relating to the failure of the State to establish the chain of custody for the evidence, the thrust of Pool's argument is that the deputy sheriff did not have the baggies in his personal possession all of the time from the arrest until they were logged into evidence. The deputy sheriff identified Exhibits 1 and 2 as the baggies that were taken from Pool after he was arrested. We are satisfied that this issue is disposed of by prior cases in Wyoming. The state of the law is summarized in *Rosenbaum v. State,* 915 P.2d 1200, 1201–03 (Wyo.1996) (emphasis added), from which we quote extensively:

> Generally, all relevant evidence is admissible. *Candelaria v. State,* 895 P.2d 434,

436 (Wyo.1995). As part of the relevancy determination, Wyo.R.Evid. 901 requires the authentication or identification of physical evidence before the evidence is admissible. *Taul v. State*, 862 P.2d 649, 656–57 (Wyo.1993). Proper foundation for the admission into evidence of controlled substances requires that a chain of custody be established. *Ostrowski v. State*, 665 P.2d 471, 490 (Wyo.1983). The purpose for this standard for the admission of exhibits into evidence is that there must be a showing that the physical exhibit being offered is in substantially the same condition as when the crime was committed. *Robinson v. State*, 716 P.2d 364, 369 (Wyo.1986). This determination is to be made by the trial judge and may not be overturned but for a clear abuse of discretion. *Candelaria*, 895 P.2d at 436.

## DISCUSSION

■ The character of controlled substance evidence requires laying of a particular type of foundation in order to satisfy Rule 901 since, typically, a specific controlled substance sample has no distinct characteristic by which to readily differentiate it from other such samples or from similar appearing but lawfully possessed substances. *Robinson*, 716 P.2d at 368–69. Authentication and identification of the specific sample are accomplished by setting out the circumstances surrounding its custody in the period between seizure and trial. *Id.; United States v. Cardenas*, 864 F.2d 1528, 1531–32 (10th Cir.1989), *cert. denied*, 491 U.S. 909, 109 S.Ct. 3197, 105 L.Ed.2d 705 (1989). If the opponent seeks exclusion based on alteration, misidentification, or contamination of the evidence, he must support that charge with more than speculation. *Robinson*, 716 P.2d at 369; *see Westwood v. State*, 693 P.2d 763, 767 (Wyo.1985).

* * *

Rosenbaum's challenge required the trial court to consider the nature of the evidence the State would present, the circumstances surrounding its preservation and custody, and the likelihood of any tampering. The trial court does not abuse its discretion in admitting the evidence if it can rationally conclude from these factors that the evidence to be introduced is in substantially the same condition as it was at the time of the defendant's alleged crime.

The State's burden in meeting the foundation requirement is not a heavy one for Rule 901 is intended to preserve the general preference of the rules of evidence in favor of admissibility. *Once the proffered evidence is connected to the charged crime, any defects or uncertainties whether evident in the State's foundation or deriving from contrary evidence by a defendant should be held to affect only the weight of the proffered evidence, not its admissibility.* *Taul*, 862 P.2d at 657.

The burden of the State with respect to such a chain of custody is to set forth such facts as would permit a reasonable certainty that a drug sample, which has otherwise been identified and tied to the case, has not been materially tampered with or altered subsequent to its seizure. *Westwood*, 693 P.2d at 767. Some prima facie foundation must be provided making it reasonably probable that no material change has occurred to the sample which would render its admission misleading. *Robinson*, 716 P.2d at 368–69; *Westwood*, 693 P.2d at 767; *DeLuna v. State*, 501 P.2d 1021, 1025 (Wyo.1972). Although in controlled substances cases the State must generally show a continuous chain of custody of the drugs, it need not show that its agents maintained a round-the-clock watch over that evidence or produce the testimony of each person who handled the evidence. *Robinson*, 716 P.2d at 368–69.

Our review of the record indicates that standard procedures were followed by State agents. The forensic chemist testified he found no evidence of an actual, material alteration of the composition of the substance or material tampering with it. In view of the legal principles just discussed, we agree with the State's view that a defendant cannot have controlled substances evidence excluded by pointing

solely to a discrepancy related to the weight of the proffered substances.

[¶ 15] In *Robinson v. State*, 716 P.2d 364, 369 (Wyo.1986) (emphasis added), upon which the court relied in deciding *Rosenbaum*, we said:

> In drug cases like this one, the physical evidence often has no distinctive characteristics so the circumstances, or more specifically the chain of custody, must be established. *Ostrowski v. State*, Wyo., 665 P.2d 471, 490 (1983); 5 D. Louisell & C. Mueller, supra, [Federal Evidence] § 515 at 88 (1981). But the
>
> *"proponent need not maintain physical objects * * * under round-the-clock watch, and need not call as authenticating witnesses each person who handled the object from the time of its recovery to the time of trial, so long as enough testimony is presented to permit a reasonable inference that the object offered is what the proponent claims it to be."* 5 D. Louisell & C. Mueller, supra, § 515 at 88–89.

If the opponent seeks exclusion based on alteration of the evidence, he must support that charge with more than speculation. *Ostrowski v. State*, supra, 665 P.2d at 490.

[¶ 16] We are satisfied that the record in this case established a sufficient chain of custody for the evidence taken when Pool was searched to justify its admission into evidence by the trial court in the appropriate exercise of its discretion. We note in passing that no objection was made to the admission of this evidence at trial, and consequently we have considered it under the plain error doctrine. In applying the "plain error" rule, we hold that there was no violation of a clear and unequivocal rule of law when the trial court admitted this evidence.

[¶ 17] The Judgment and Sentence of the trial court is affirmed in all respects.